Paul VELDHOEN and Arnoldus
Broekhoven

v.

The UNITED STATES COAST
GUARD, et al.

Civ. A. No. 93–3730.

United States District Court,
E.D. Louisiana.

Nov. 16, 1993.

---

Robert Hugh Murphy, Peter Brooks Sloss, Lawrence R. Plunkett, Jr., Murphy,

Williams, et al., New Orleans, LA, for plaintiffs.

Keith B. Letourneau, U.S. Dept. of Justice, Washington, DC, Nancy Ann Nungesser, U.S. Attys. Office, New Orleans, LA, for defendants.

### ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is the motion of petitioners Arnoldus Broekhoven and Paul Veldhoen for declaratory judgment, a temporary restraining order or a preliminary injunction prohibiting the U.S. Coast Guard from investigating a collision on the high seas between two foreign vessels. Petitioners further request that the Court quash the subpoenas issued to them by the Coast Guard pursuant to its investigation. For the reasons that follow, the petition is DENIED.

### I.

On November 6, 1993 at 8:30 p.m. the M/S NOORDAM, a Netherlands Antilles flagged cruise ship collided with the M/S MOUNT YMITOS, a freighter sailing under the Maltese flag. At the time of the collision with the M/S NOORDAM, of the 1207 passengers aboard, 1124 were U.S. citizens. It is undisputed that the accident occurred outside of U.S. navigable waters, approximately one mile beyond the three mile limit which defines the boundary of U.S. navigable waters. The collision apparently did considerable damage to both vessels, but there were no reported injuries and no fatalities.

After the accident, the United States Coast Guard convened a marine board of inquiry, naming the Chief Officer of the M/S NOORDAM, Arnoldus Broekhoven, and his Third Officer, Paul Veldhoen, as parties in interest. The incident occurred on their watch. The marine board ordered that Broekhoven and Veldhoen appear at a hearing to testify as to the cause of the accident. Broekhoven and Veldhoen, who were both on the bridge of the M/S NOORDAM at the time of the accident, want the investigation enjoined; they resist by asserting that the Coast Guard has no authority to conduct an investigation and that failure to grant an injunction could lead

to irreparable harm to their professional futures because the Coast Guard's investigation could result in adverse action by Dutch authorities, including the possible revocation of their licenses.

The question their motion targets is whether, by enacting 46 U.S.C. § 6101(e)(1), Congress intended to give the Coast Guard the power to conduct an investigation of this kind of incident involving two foreign flag vessels, one of which was a cruise ship carrying U.S. passengers? Based on the statutory expression of Congress, the Court holds that 46 U.S.C. § 6101 was enacted to enable the U.S. Coast Guard to investigate precisely this kind of incident.

## II.

46 U.S.C. § 6101(a) provides:

(a) The Secretary shall prescribe regulations on the marine casualties to be reported and the manner of reporting. The regulations shall require reporting the following marine casualties:

(1) death of an individual.

(2) serious injury to an individual.

(3) material loss of property.

(4) material damage affecting the seaworthiness or efficiency of the vessel.

(5) significant harm to the environment.

46 U.S.C. § 6101(e)(1) was added to the statute in 1991 to provide for U.S. Coast Guard investigations of certain accidents involving foreign cruise ships. 46 U.S.C. § 6101(e)(1) provides: [1]

(1) This chapter applies to a marine casualty involving a United States citizen on a foreign passenger vessel operating south of 75 degrees north latitude, west of 35 degrees west longitude, and east of the International Date Line; or operating in the area south of 60 degrees south latitude that—

(A) embarks or disembarks passengers in the United States or

(B) transports passengers traveling under any form of air and sea ticket package marketed in the United States.

(2) When there is a marine casualty described in paragraph (1) of this subsection and an investigation is conducted, the Secretary shall ensure that the investigation—

(A) is thorough and timely; and

(B) produces findings and recommendations to improve safety on passenger vessels.

(3) When there is a marine casualty described in paragraph (1) of this subsection, the Secretary may—

(A) seek a multinational investigation of the casualty under auspices of the International Maritime Organization; or

(B) conduct an investigation of the casualty under chapter 63 of this title.

According to subsection (e)(1), when a marine casualty occurs that involves U.S. passengers, within the defined geographic region[2], the Secretary has the discretionary authority to investigate the incident through a marine board of investigation convened under chapter 63 of Title 46 or under a multinational mode of inquiry.

Petitioners argue that the central question[3] in considering the Coast Guard's jurisdiction under § 6101(e)(1) is, when does a marine casualty "involve" a United States citizen? The principal thrust of their position focuses on their interpretation of the statute. They argue that § 6101(e)(1) must

---

1. This subsection (e) is the second of two such subsections that were enacted, inadvertently, as part of the statute. The statute is hardly a role model of good legislative draftmanship, but its meaning nevertheless becomes clear when considered in its totality.

2. The incident here was well within the defined boundaries.

3. Petitioners' argument that the Coast Guard's own definition of a marine casualty does not encompass the incident here is without merit.

Petitioners overlook 46 CFR § 4.03–1(b) which adds the following definition:

The term marine casualty or accident includes any accidental grounding, or any occurrence involving a vessel which results in damage by or to the vessel, its apparel, gear, or cargo, or injury or loss of life of any person; and includes among other things, collisions, strandings, groundings, founderings, heavy weather damage, fires, explosions, failure of gear and equipment and any other damage which might affect or impair the seaworthiness of the vessel.

be read in conjunction with subsection (a) and that a marine casualty "involves" a United States citizen under subsection (e)(1) only when a United States citizen is killed, seriously injured, or sustains a material loss of property under subsection (a). Their interpretation is unpersuasive.

### A.

In interpreting § 6101(e)(1) the Court is mindful of the long-established canon of statutory construction that U.S. law is to be interpreted in a way not to violate international law absent a clear indication of Congressional intent to do so. *United States v. Marino–Garcia,* 679 F.2d 1373, 1380 (1982), *cert. denied, Pauth–Arzuza v. United States,* 459 U.S. 1114, 103 S.Ct. 748, 74 L.Ed.2d 967 (1983), quoting *Murray v. The Schooner Charming Betsy,* 6 U.S. (S Cranch) 64, 118, 2 L.Ed. 208 (1804).

Under customary international law, "to insure the principle of freedom of the seas, international law generally prohibits any country from asserting jurisdiction over foreign vessels on the high seas ... Indeed such vessels are generally considered under the exclusive jurisdiction of the country whose flag they fly." *United States v. Marino–Garcia,* 679 F.2d at 1381 (citations omitted.)

Thus, § 6101(e)(1) stands out as an exception to that generally acknowledged principle of international law, and must bear a sufficiently clear indication of Congressional intent to stray from that principle. *See E.E.O.C. v. Arabian American Oil Co.,* 499 U.S. 244, 256–57, 111 S.Ct. 1227, 1235, 113 L.Ed.2d 274 (1991) (when Congress desires to do so, it knows how [i.e. with sufficient clarity] to place the high seas within the jurisdictional reach of a statute). This addition to the statute was of concern to both Congress and the President when passage was being considered.

It was the purpose of the new provision to confirm legislatively that Coast Guard investigations are meant to "[produce] findings and recommendations to improve safety on passenger vessels." 46 U.S.C. § 6101(e)(2)(B). This conclusion is supplemented by some of the legislative debate, which expressed frustration that the Coast Guard lacked the authority at the time to compel the participation of foreign vessels in investigations into passenger ship collisions. Congress was concerned that disasters on the high seas could threaten the safety of U.S. citizens on foreign ships.

Congressman Jones, of North Carolina, the sponsor of the amendment that became subsection (e)(1) commented that his amendment was designed to give the Coast Guard the discretionary authority to investigate accidents on the high seas. 110 Cong.Rec. H5614, H5615 (daily ed. July 18, 1991). He noted that the Coast Guard was conducting an investigation of an engine room fire aboard a Bahamian cruise ship (carrying U.S. citizens) only because the Bahamian government and the cruise company were complying voluntarily with the investigation. *Id.*

Congressman Tauzin noted that close to eighty percent of the cruise-vessel passengers worldwide are U.S. citizens and thought it important to make every effort to verify the safety and reliability of passenger vessels carrying United States passengers. *Id.*

Congressman Fields made special reference to the accident litigated in *National Transportation Safety Board v. Carnival Cruise Lines, Inc.,* 723 F.Supp. 1488 (S.D.Fla.1989) in which the owners of the M/V Celebration (a cruise ship carrying U.S. passengers and involved in a serious collision in international waters) refused to cooperate with the Coast Guard's investigation of the accident. That celebrated case drove Congress to act. *Carnival Cruise Lines* concerned a collision between the Carnival Cruise ship and a Cuban freighter. The Cuban freighter was cut in half. No U.S. citizen was hurt, and none was killed; and the record does not disclose that any property loss was sustained by a U.S. citizen (a threshold test encouraged by petitioners and rejected by this Court). But three crew members of the Cuban vessel were killed. The vessel itself was destroyed. Congressman Fields was worried by the refusal of the Carnival Cruise ship owners to cooperate. He observed that "as Members of Congress

we have a fundamental obligation to safeguard the safety of our constituents." *Id.*

■ All these observations suggest that the Congress was of the belief that the Coast Guard should have the discretion to investigate these incidents when U.S. passengers have been put at risk. Thus, the government contends, and the Court agrees, that Congress has stated that it meant for the Coast Guard to investigate accidents causing material damage to a cruise ship carrying U.S. passengers for hire within a defined geographic zone.[4] 46 U.S.C. § 6101(a)(4). The nature and extent of damage to the vessels has not been disputed here.[5]

It is also of more than passing importance to recall that President Bush, when signing the legislation that became subsection (e)(1) expressed these reservations:

> [Subsection (e)(1)] authorizes the Coast Guard to investigate casualties involving foreign vessels in international waters under certain circumstances. Customary international law would preclude assertion of jurisdiction by any but the flag state of the vessel involved in the casualty. I can envision virtually no circumstances under which it would be necessary for the Coast Guard to conduct a unilateral investigation contrary to customary international law.

1991 U.S.Code Cong. & Admin.News 1867, 1900.

The fact that the President spoke to the possibility of a unilateral Coast Guard investigation, also suggests that the Coast Guard would indeed possess and was granted the power to conduct such an investigation. It was simply the President's view that the better political course would be for the Coast Guard to use its discretion to instead seek a multinational investigation, which the amendment also authorized.

### B.

Petitioners have conceded that their constitutional misgivings about § 6101(e) were misstated, and should have instead been presented as an objection on the ground of conflict with international law. In light of the Court's holding regarding Congress' power to supersede uncodified international law, however, this objection is without merit.[6]

### C.

■ The challenge to the Coast Guard's authority to issue subpoenas because petitioners are Dutch nationals is also unpersuasive.

The statute gives the Coast Guard the discretionary authority to conduct investigations of marine casualties "involving" U.S. passengers (foreign cruise ships carrying U.S. passengers on board) as long as the foreign vessel is a passenger ship and the U.S. passenger's ticket was bought in the United States or the U.S. passengers boarded or disembarked in the U.S. 46 U.S.C. § 6101(e)(3)(A) and (B) grant the Secretary the discretionary authority to either seek a multinational investigation of the casualty under the auspices of the International Maritime Organization, or to conduct an investigation under chapter 63 of Title 46. It is the "chapter 63" investigation that is at issue here.

---

**4.** This Court is not a disciple of the use of legislative history to divine a statute's meaning. That background, however, supplements the Court's understanding of the statutory expressions of § 6101(a)(1)–(e)(1) and, to that limited extent, seems an instructive aid.

**5.** In fact, this incident is the subject of a $25,-000,000 suit that is also pending before the Court. *Antillen N.V., et al. v. The M/S Mount Ymitos, et al.*, CA No. 93–3714. Both sides also agree that no United States treaty would be violated by the Court's interpretation of § 6101(e)(1). This Court has no authority to strike down an act of Congress merely because it violates international law, unless that international law has been received in a treaty which is

binding on the United States and the federal statute is inconsistent with our treaty obligations. *See United States v. Postal*, 589 F.2d 862, 873 (5th Cir.1979), *cert. denied, Postal v. United States*, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 40 (1979); *See also Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1334 (2nd Cir.1972) cited in *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 494 F.Supp. 1161, 1178 (1980).

**6.** In addition, the Court notes that another court has also observed that the legislation enacted in § 6101(e)(1) would not exceed the Congress' power to legislate. *National Transportation Safety Board v. Carnival Cruise Lines*, 723 F.Supp. 1488, 1491 (1989).

Under a chapter 63 investigation, the subpoena power of the Coast Guard is made coextensive with that of the U.S. district courts:

> In any investigation under this chapter, the attendance and testimony of witnesses, including parties in interest, and the production of any evidence may be compelled by subpena. *The subpena authority granted by this section is coextensive with that of a district court of the United States, in civil matters, for the district in which the investigation is conducted.*

(emphasis added.) 46 U.S.C. § 6304(a). The Court finds that under these circumstances a district court would have subpoena power over petitioners because they are present within this federal district, and therefore, the Coast Guard has that same power. Fed.R.Civ.Proc. 45(b)(2).

Accordingly, because the Court finds that petitioners have failed to demonstrate that there is a reasonable likelihood of success on the merits,[7] their petition for declaratory and injunctive relief is DENIED. The petitioners' motion to quash the subpoenas commanding their presence is also DENIED.[8]

---

7. Fed.R.Civ.P. 65; *Jackson v. Stinchcomb*, 635 F.2d 462, 466 (5th Cir.1981).

8. The Court has not overlooked the sensitive issues of international law that are at work here. However, Congress' concern for the safety of U.S. passengers on foreign vessels is not only legitimate, it is mandated by the implicit responsibility of the national legislature for the safe passage of U.S. citizens. It is this legitimate prerogative that the court so ably recognized in the *Carnival Cruise Lines* decision. In that case,

Congress had not acted. In this case, it has. A U.S.-sponsored investigation should not be made to await a calamity on the high seas that involves the death or injury of a U.S. citizen. It is enough that damage to an involved vessel occurs, within the meaning of subsection (a)(4), and that U.S. citizens were passengers on one of the vessels. Only this interpretation gives any rational meaning to and places in their proper relationship subsections (a)(4), (d)(1) and (e)(1) of the statute.