United States Court of Appeals,

Fifth Circuit.

No. 93-3788.

Paul VELDHOEN and Arnoldus Broekhoven, Plaintiffs-Appellants,

v.

UNITED STATES COAST GUARD, T.A. "Barney" Turlo, and Lt. Commander Matthew G. Williams, Defendants-Appellees.

Oct. 17, 1994.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before POLITZ, Chief Judge, WISDOM and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

I.

Paul Veldhoen and Arnoldus Broekhoven ("the sailors") appeal the denial of a petition to enjoin the United States Coast Guard's investigation of a high-seas collision. Because we find that there was no final agency action and, therefore, the district court lacked jurisdiction to hear the sailors' petition, we affirm.

II.

Sometimes two ships do not pass in the night. In the evening of November 6, 1993, the M/S Mount Ymitos, a Maltese-flagged freighter, collided with the M/S Noordam, a cruise ship sailing under the Netherlands Antilles flag. The accident occurred approximately one mile beyond the three-mile limit of United States navigable waters. Of the 1207 passengers aboard the Noordam, 1124 were U.S. citizens. The collision damaged both vessels.

The U.S. Coast Guard, through Captain T.A. "Barney" Turlo and Lt. Commander Matthew G. Williams (collectively "the Coast Guard"), convened a Marine Board to investigate the accident. Paul Veldhoen and Arnoldus Broekhoven were called as "parties in interest" and subpoenaed to testify. Veldhoen was the Noordam's third officer, and Broekhoven was the chief officer. Both men were on duty at the time of the collision.

The sailors, however, petitioned the district court for declaratory judgment, to quash the

subpoenas, and for injunctive relief, arguing that the Coast Guard lacked jurisdiction to investigate a high-seas collision where no Americans suffered injury, damage, or loss 838 F.Supp. 280.[1]  They also argued that their careers could suffer irreparable harm if the hearing was allowed to continue.

The district court denied the petition, because it found that the sailors had failed to demonstrate a reasonable likelihood of success on the merits.  The court reviewed the relevant statutory authority, 46 U.S.C. § 6101 *et seq.* (Supp.1994), and determined that the investigation likely fell within Congress's grant of authority to the Coast Guard.  The power to issue subpoenas also was upheld under a reading of the statute.  The sailors appealed as per 28 U.S.C. § 1292(a)(1).

### III.

Congress has authorized the Coast Guard, in its discretion, to investigate "a marine casualty involving a United States citizen on a foreign passenger vessel" within certain geographic limits, if that vessel "embarks or disembarks passengers in the United States" or "transports passengers traveling under any form of air and sea ticket package marketed in the United States."  46 U.S.C. § 6101(e)(1).[2]  The meaning of the phrase "marine casualty" is qualified in 46 U.S.C. § 6101(a), which provides:

> (a) The Secretary shall prescribe regulations on the marine casualties to be reported and the manner of reporting.  The regulations shall require reporting the following marine casualties:
>
> > (1) death of an individual.
> >
> > (2) serious injury to an individual.
> >
> > (3) material loss of property.
> >
> > (4) material damage affecting the seaworthiness or efficiency of the vessel.
> >
> > (5) significant harm to the environment.

Regulations duly promulgated by the Secretary of Transportation also guide the Coast Guard in the

---

[1]At the time of the district court's decision, no American passengers had claimed injury, damage, or loss.  Two days later, a class action lawsuit alleging personal injury was filed on behalf of the Noordam's passengers.

[2]The sailors admit that this incident occurred within the statutorily-defined geographic demarcation.  Moreover, the sailors concede the requisite commercial nexus exists with the United States, as the American passengers boarded in New Orleans, Louisiana.

exercise of its duties. *See* 46 C.F.R. § 4.01-1 *et seq.* (1992).

The statute also requires that the Secretary's investigation of casualties shall be "thorough and timely," 46 U.S.C. § 6101(e)(2)(A), and must produce "findings and recommendations to improve safety on passenger vessels," *id.* § 6101(e)(2)(B). The Coast Guard has subpoena authority to conduct its investigation. *Id.* § 6304.

IV.

We need reach only one issue. The Coast Guard argues that the district court's denial of the sailor's request for a preliminary injunction was proper, because it lacked jurisdiction to interfere with ongoing agency investigations. The Coast Guard did not raise this argument in the district court. Nonetheless, the issue of subject matter jurisdiction may be raised for the first time on appeal. *Garlotte v. Fordice,* 29 F.3d 216, 217 (5th Cir.1994).

Federal courts are courts of limited jurisdiction. Absent jurisdiction conferred by statute, district courts lack power to consider claims. This limitation is doubly significant for suits against the federal government, which, absent express waiver, are barred by the doctrine of sovereign immunity. *Kansas v. United States,* 204 U.S. 331, 341, 27 S.Ct. 388, 390-91, 51 L.Ed. 510 (1907).

The relevant statutory provisions governing marine casualty reporting and investigations at issue here do not provide directly for judicial review. *See* 46 U.S.C. §§ 6101-6104, 6301-6307. As a result, while the sailors may seek review of the Coast Guard's actions under other grants of federal jurisdiction, they must do so within the framework of the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 702; *accord Califano v. Sanders,* 430 U.S. 99, 103-07, 97 S.Ct. 980, 983-85, 51 L.Ed.2d 192 (1977).

The APA permits "non-statutory" judicial review only of "final agency action." 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no adequate remedy in a court are subject to judicial review."); *see also Bell v. New Jersey,* 461 U.S. 773, 778, 103 S.Ct. 2187, 2191, 76 L.Ed.2d 312 (1983) (recognizing "strong presumption" that judicial review will be available only when agency action has become final). If there is no "final agency action," as required by the controlling statute, a court lacks subject matter jurisdiction.

*Federal Power Comm'n v. Metropolitan Edison Co.,* 304 U.S. 375, 383-85, 58 S.Ct. 963, 966-68, 82 L.Ed. 1408 (1938); *Geyen v. Marsh,* 775 F.2d 1303, 1308-09 n. 6 (5th Cir.1985); *see generally* CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3942 (1977). A final agency action is one that imposes an obligation, denies a right, or fixes a legal relationship. *United States Dep't of Justice v. Fed. Labor Relations Auth.,* 727 F.2d 481, 493 (5th Cir.1984).

An agency's initiation of an investigation does not constitute final agency action. *See FTC v. Standard Oil Co.,* 449 U.S. 232, 239-45, 101 S.Ct. 488, 493-96, 66 L.Ed.2d 416 (1980) (holding issuance of administrative complaint to initiate proceedings not final agency action); *Dow Chemical Co. v. EPA,* 832 F.2d 319, 325 (5th Cir.1987) (holding "allegation made in enforcement suit does not impose the *kind* of legal obligation with which the finality doctrine is concerned"). Normally, the plaintiff must await resolution of the agency's inquiry and challenge the final agency decision. *Standard Oil,* 449 U.S. at 244-45, 101 S.Ct. at 495-96.

An attack on the authority of an agency to conduct an investigation does not obviate the final agency action requirement. *See Aluminum Co. of Am. v. United States,* 790 F.2d 938, 942 (D.C.Cir.1986) (Scalia, J.) (holding claim that agency action is beyond statutory authority does not "make any difference" for finality analysis); *Ticor Title Ins. Co. v. FTC,* 814 F.2d 731, 747 (D.C.Cir.1987) (Williams, J., concurring) ("[A]n agency's decision to initiate proceedings does not become final merely because the challenger attacks the agency's jurisdiction, even where the attacks raises a pure question of law."). A claim that an agency action is in plain contravention of a statutory mandate, however, may present one of the extraordinary exceptions to the finality requirement. *Coca-Cola Co. v. FTC,* 475 F.2d 299, 303 (5th Cir.), *cert. denied,* 414 U.S. 877, 94 S.Ct. 121, 38 L.Ed.2d 122 (1973) (citing *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958)).

Here, the sailors' petition was filed in district court in an attempt to shortcut the proceedings at the start of the Marine Board inquiry. The finality doctrine, however, does not allow this circumnavigation. The obligation to defend oneself before an agency is not the type of obligation that creates final agency action. *See Standard Oil,* 449 U.S. at 244, 101 S.Ct. at 495. Moreover, the statutory scheme at issue here is merely investigatory and only empowers the Secretary to recommend

further civil or criminal action. *See* 46 U.S.C. § 6301. The Board's conclusions—which notably have not been made yet—will not fix legal rights or impose obligations, even if further proceedings prompted by the Board's decision may.

Finally, we do not find the Coast Guard's action so at odds with the statute as to present one of the extraordinary exceptions to the finality doctrine. At best, this dispute is over the agency's interpretation of its statute and the regulations, an activity to which courts generally grant deference to agencies. *See Chevron, U.S.A., Inc. v. NRDC,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Any challenges to the Coast Guard's jurisdiction may be raised in subsequent actions to the Coast Guard's investigation. Therefore, we hold that there was no final decision or order, and the district court lacked jurisdiction to consider the sailors' petition.

The district court denied an injunction because of the lack of merit. The court instead should have dismissed for want of jurisdiction. The result is the same. The judgment is AFFIRMED as modified.