**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 95-50065
(Summary Calendar)

TOMMY HAYRE AND LELEE HAYRE,

Plaintiffs-Appellees,

versus

DAN GLICKMAN, Secretary, United States
Department of Agriculture,

Defendant-Appellant.

Appeal from the United States District Court
For the Western District of Texas
(P-94-CA-25)

November 2, 1995

Before GARWOOD, WIENER, and PARKER, Circuit Judges:

PER CURIAM[*]:

Plaintiffs-Appellants Tommy and LeLee Hayre sought a preliminary injunction to enjoin implementation of the Department of Agriculture's (Department's) April 1994 decision to withhold the Hayres' 1993 price support payment (April Withholding) under the

---

[*]Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

National Wool and Mohair Act of 1954[1] (Act), pending further investigation. The district court held, <u>inter alia</u>, that the April Withholding was not a "final agency action" under the Administrative Procedure Act[2] (APA) and dismissed the action for lack of jurisdiction. In this appeal we address whether the April Withholding was a "final agency action." We conclude that it was not, affirm the district court's judgment, and dismiss this appeal for lack of jurisdiction.

I

FACTS AND PROCEEDINGS

A.   STATUTORY BACKDROP

The Act established the wool and mohair price support program (Program). The Program is administered by the Department through two of its components, the Commodity Credit Corporation (CCC) and the Agricultural Stabilization and Conservation Service (ASCS).[3] Under the Program, wool and mohair ranchers receive incentive payments for any years in which average producer prices for wool and mohair are lower than support prices determined by the Secretary of Agriculture.[4]

There are several significant limitations on eligibility and payment under the Program. First, as of 1991, no "person" may receive more than a specified dollar amount in wool or mohair

---

[1] 7 U.S.C. § 1782 <u>et seq.</u> (West 1982 & Supp. 1995).

[2] 5 U.S.C. § 704 (West 1970 & Supp. 1995).

[3] <u>See</u> 7 C.F.R. § 1468.2(a).

[4] 7 U.S.C. § 1782.

payments in a given year.[5]  Second, to qualify as a "person" eligible to receive support payments, a rancher must be "actively engaged in farming."[6]  Any person who adopts or participates in a scheme or device that is intended to evade, or has the effect of evading, these limitations in any year forfeits eligibility for that year's payments as well as the following year's.[7]

B.   FACTUAL BACKGROUND

Tommy and LeLee Hayre are wool and mohair ranchers in Texas. Prior to 1991, they had received substantial wool and mohair subsidy payments.[8]  In 1991, Congress established statutory limits on the amount of payment a "person" could receive.  Tommy Hayre's parents, Jack and Dixie Hayre,[9] received wool and mohair payments

---

[5] See 7 U.S.C. § 1783(b)(1).  This section sets the relevant limits as follows:

> (A) $200,000 for the 1991 marketing year;
> (B) $175,000 for the 1992 marketing year;
> (C) $150,000 for the 1993 marketing year. . . .

Id.

[6] See 7 C.F.R. § 1497.201 et seq.

[7] See 7 U.S.C. § 1308-2; 7 C.F.R. § 1497.6.

[8] We are unable to determine whether Tommy and LeLee Hayre jointly received a single support payment in all the relevant years or whether only Tommy received a payment prior to 1991 and then in 1991 LeLee began receiving an independent payment.  The parties' briefs indiscriminately attribute actions to Tommy alone, receipt of payments by Tommy alone, and receipt of payments by Tommy and LeLee jointly.  This ambiguity does not affect our decision; however, so we shall assume that the actions taken and payments received by Tommy and LeLee Hayre were joint and thus attributable to both husband and wife.

[9] Similarly, we assume that the actions taken and payments received by Jack and Dixie Hayre were joint.

3

for the first time in 1991. Tommy and LeLee Hayre continued to receive support payments in 1991, as they had in prior years.

On April 8, 1994, the Department's Office of the Inspector General (IG), an independent entity charged with conducting investigations and detecting program related fraud,[10] sent the Texas ASCS (TASCS) a memorandum (Memorandum) advising the TASCS of an ongoing review by the IG of the 1991 and 1992 wool and mohair payments received by members of the Hayre family.

The Memorandum stated that, until 1990, "Tommy Hayre [and, we assume, LeLee]" were the only members of the Hayre family who participated in the wool and mohair subsidy programs, and that they had been receiving large payments from the government prior to the years in question. The Memorandum noted further that in 1991 (when the per person payment limits went into effect), Jack and Dixie Hayre--respectively, a semi-retired and legally blind attorney and a retired teacher, both of whom were in their seventies--began participating in the Program for the first time.

The Memorandum went on to explain that, based on its investigation, the IG's office had concluded that in 1991 the elder Hayres, Jack and Dixie, were not, as the statute required, "actively engaged in farming." Thus, they had received $323,752 in improper subsidies for that year. Furthermore, stated the Memorandum, "indications are that a scheme or device was adopted" by the Hayre family "to evade the payment limitation[s]." If these allegations proved to be true, the two Hayre couples would be

_____

[10] See 7 C.F.R. § 2610.1.

4

jointly and severally liable to repay a total of $867,999 for the improper 1991 and 1992 payments they had received. The IG's office stated that to complete its review, it needed more documents from the Hayres, but that those papers had not been provided despite repeated requests.

On April 12, 1994, the TASCS concluded that "substantial evidence [exists] that the Hayres had adopted a scheme or device to evade statutory payment limitations." Consequently, that office (1) withheld Tommy and LeLee Hayre's 1993 payments pending further investigation and (2) requested that the Tommy and LeLee Hayre provide, within thirty days, the documents necessary to complete the review of the Hayre family operations. In response, Tommy and LeLee Hayre requested and received a thirty-day extension of time within which to submit the necessary information.

On June 29, 1994, Tommy and LeLee Hayre filed a petition in federal district court seeking a preliminary injunction ordering the release of the withheld 1993 subsidy payments.[11] The Hayres alleged that the April Withholding violated both the Due Process Clause and the APA.

Then, on July 18, 1994, before a hearing was held in or a decision rendered on the injunction petition by the district court, the TASCS determined (July Determination) that the Hayres had been overpaid in 1991 and 1992, and thus their 1993 payment was subject to offset. The TASCS concluded, <u>inter alia</u>, that (1) Jack and

---

[11] Jack and Dixie Hayre were not parties below and thus are not parties to this appeal.

Dixie Hayre had not been "actively engaged in farming" in 1991; (2) Tommy, LeLee, Jack, and Dixie had failed to operate as separate persons during 1991; and (3) all four Hayres had adopted or participated in a scheme or device designed to evade, or that had the effect of evading, the payment limitation and eligibility rules in 1991. On July 29, 1994, the Hayres sought reconsideration of the July Determination.[12]

On December 19, 1994, the district court ruled that the April Withholding was a preliminary, procedural, or intermediate agency action, and thus not a "final agency action" under the APA. Accordingly, the court concluded that it lacked subject matter jurisdiction and dismissed the Hayres' claims. The Hayres timely appealed.

## II

## ANALYSIS

A. STANDARD OF REVIEW

A district court's determination that it lacks subject matter jurisdiction is reviewed de novo.[13]

B. FINAL AGENCY ACTION

The APA only authorizes review of a "final agency action for which there is no other remedy in a court."[14] A final agency action is one that imposes an obligation, denies a right, or fixes a legal

---

[12] According to the parties' briefs, no hearing has been held.

[13] Henderson v. United States, 35 F.3d 222, 225 (5th Cir. 1994).

[14] 5 U.S.C. § 704.

6

relationship.[15]  Absent such final agency action, a court lacks subject matter jurisdiction.[16]  Moreover, we are reluctant to interfere with administrative rulings until administrative agencies have finished their work.[17]

The Hayres argue that the April Withholding was a final agency decision because it (1) denied them present use of the subsidy payments, and (2) gave the government an unfair litigation advantage.  This argument is frivolous.  First, the April Withholding did not fix a legal relationship:  the subsidy payments were temporarily withheld, pending further investigation.[18]  Second, the harms complained of by the Hayres are not generally the types of obligations or denials of rights contemplated by the statute.  An obligation to defend oneself before an agency is not an "obligation" which constitutes a final agency action.[19]  As we agree with the district court that the April Withholding did not

---

[15] Veldhoen v. U.S. Coast Guard, 35 F.3d 222, 225 (citing United States Dep't of Justice v. Fed. Labor Relations Authority, 727 F.2d 481, 493 (5th Cir. 1984)).

[16] Veldhoen, 35 F.3d at 225; Taylor-Callahan-Coleman Counties Dist. Adult Probation Dep't v. Dole, 948 F.2d 953, 956 (5th Cir. 1991).

[17] U.S. Dep't of Justice v. Federal Labor Relations Authority, 727 F.2d at 493.

[18] See Veldhoen, 35 F.3d at 225 ("An agency's initiation of an investigation does not constitute final agency action.  Normally, the plaintiff must await resolution of the agency's inquiry and challenge the final agency decision.").

[19] See F.T.C. v. Standard Oil of California, 449 U.S. 233, 242 (1980) (holding that obligations inherent in litigation are "different in kind and legal effect from the burdens attending what heretofore has been considered a final agency action); see also Dow Chemical v. U.S. E.P.A., 832 F.2d 319, 325 (5th Cir. 1987).

constitute a final agency action, we affirm that court's dismissal of the Hayres' complaint for lack of jurisdiction.

B.   MOOTNESS

If a dispute has been resolved or if it has evanesced because of changed circumstances, it is moot.[20]  After the Hayres challenged the April Withholding and before the district court could address the merits of that challenge, the circumstances changed:  The July Determination superseded and replaced the April Withholding.  As a result, the April Withholding evaporated, rendering the Hayres' complaint moot.  Accordingly, we hold in the alternative that subsequent actions by TASCS rendered the Hayres' complaint, and thus this appeal, moot.[21]

III

CONCLUSION

Because (1) the April Withholding was not a final agency action and (2) it was superseded by the July Determination, the district court never had jurisdiction to hear the Hayres' complaint.  It follows, then, that we do not have appellate jurisdiction.  For these two alternative reasons, this appeal is DISMISSED.

---

[20] American Medical Association v. Bowen, 857 F.2d 267, 270 (5th Cir. 1987).

[21] This is a narrow holding and neither res judicata nor law of the case would prevent the Hayres from challenging the July Determination in a separate cause of action.  We neither express nor imply an opinion on the merits of any future suit challenging the July Determination.