**AUSTRAL OIL COMPANY, INC., and American Exploration Company, a Delaware corporation, Plaintiffs**

v.

**NATIONAL PARK SERVICE, an agency of the United States Department of the Interior, John E. Cook, in his official capacity as Regional Director for the Southwest Region of the National Park Service, Oryx U.K. Energy Company, a Delaware corporation, and Oryx Energy Company, a Delaware corporation, Defendants**

Civ. A. No. 3:97–CV–0058–H.

United States District Court,
N.D. Texas,
Dallas Division.

Oct. 23, 1997.

Larkin C. Eakin, Jr., Woodard Hall & Primm, Douglas Mark Selwyn, Pope Shoemake Selwyn Kerr & Hendershot, Houston, TX, for Plaintiffs.

Paul E. Coggins, U.S. Atty., U.S. Attorney's Office Dept. of Justice, Dallas, TX, Bret C. Birdsong, Sandra Zellmer, U.S. Dept. of Justice Environment & Natural Resource Div., Washington, DC, Stuart Charles Hollimon, Richard Lee Smith, Jr., Strasburger & Price, Dallas, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

SANDERS, Senior District Judge.

Before the Court are Federal Defendants' Motion To Dismiss Plaintiffs' Amended Complaint, and supporting memorandum, filed July 14, 1997; Plaintiffs' Response, and supporting memorandum, filed August 15, 1997; Federal Defendants' Reply Memorandum, filed September 16, 1997; and Conditional Motion to Dismiss of Defendants Oryx Energy Company and Oryx U.K. Energy Company ("Oryx"), filed October 16, 1997.

Because the Court does not have subject matter jurisdiction over Plaintiffs' suit against the Federal Defendants, their motion to dismiss is granted in its entirety. The Court declines to maintain supplemental jurisdiction over the Plaintiffs' claims against Oryx.

## I. BACKGROUND

In this lawsuit, Plaintiffs Austral Oil Company, Inc., and American Exploration Company seek declaratory relief against the National Park Service ("NPS") and its Regional Director, John E. Cook (collectively "Federal Defendants"), arising out of the Federal Defendants' determination that Plaintiffs are the owners or operators of a certain facility within the Padre Island National Seashore ("PINS").[1] Plaintiffs also seek monetary damages from Oryx U.K. Energy Company and Oryx Energy Company (collectively, "Oryx") for state-law claims of fraud and partial rescission of a real estate transaction between Plaintiffs and Oryx.

Pursuant to the NPS enabling legislation, 16 U.S.C. § 1 et seq. (1962), the NPS acquired seventy-one miles of barrier island surface estate and established the Padre Island National Seashore "to save and preserve, for purposes of public recreation, benefit, and inspiration, a portion of the diminishing seashore of the United States that remains undeveloped." 16 U.S.C. § 459d. In 1978, the NPS issued its Non–Federal Oil and Gas Rights Regulations for PINS. 36 C.F.R. Pt. 9, Subpart B (1955) ("Part 9, Subpart B Regulations"). The central feature of the Part 9, Subpart B Regulations is the submission and approval of a plan of operations. Under the Regulations, an "operator" may be held liable for damage to federal property resulting from the failure to comply with approved plans of operation. 36 C.F.R. § 9.51. The Part 9, Subpart B Regulations further provide for reclamation of lands and waters affected by oil and gas operators. 36 C.F.R. § 9.39(a).

In 1989, Oryx attempted to transfer to Plaintiffs certain oil and gas properties and interests located within PINS, including a certain facility ("Facility") that had been used by Oryx to collect, process, and store gas produced from nearby wells. After the purported transfer, environmental contamination was found at the Facility. Plaintiffs now claim to have discovered that Oryx, at the time of the purported transfer, held no ownership interest in the Facility. Thus, Plaintiffs argue that ownership could not have been transferred, and they are not and never have been the Facility's owners.

After the purported transfer, and on Plaintiffs' notification to the NPS that they would be the new operators of the Facility, the Part 9, Subpart B Regulations required Plaintiffs to ratify the existing plan of operations or to submit a new one. 36 C.F.R. § 9.34(b). Plaintiffs did the former. Later, the NPS advised Plaintiffs that they must either modify the ratified plan or formulate a new one. Plaintiffs opted for the latter. Negotiations over the content of that plan apparently continue.

Plaintiffs allege that they never conducted any operations at the Facility. On April 12, 1993, Plaintiffs notified the NPS that they were not the owners of the Facility. In a letter from Regional Director John Cook in January 1994 ("Cook Letter"), the NPS notified Plaintiffs of their decision, which was reached in conjunction with the Texas Railroad Commission, that Plaintiffs were legally responsible for the operations at the Facility and thus subject to the Part 9, Subpart B Regulations. On February 16, 1994, the Texas Railroad Commission issued a citation to Plaintiffs regarding alleged contamination associated with the Facility. On February 24, 1994, Plaintiffs were served by the United States Coast Guard with a Notice of Federal Interest for an Oil Pollution Incident in which Plaintiffs were notified that they may be held liable pursuant to the Oil Pollution Act for the alleged contamination.

On January 10, 1997, Plaintiffs filed this action under the Declaratory Judgment Act, 28 U.S.C. § 2201. In their Amended Complaint, filed May 30, 1997, Plaintiffs seek declaratory judgment that Plaintiffs do not now possess, and have never possessed, any

---

1. An operator is defined as a "person conducting or proposing to conduct operations." 36 C.F.R. § 9.31(d). An owner is defined as the "owner, or his legal representative, of the rights to the oil and gas being exercised." 36 C.F.R. § 9.31(i).

rights, interests, or title to the oil and gas properties that include the Facility. Plaintiffs ask the Court to declare, among other things, that they are not owners, operators, or a "responsible party" as that term is defined under the Oil Pollution Act of 1990, 33 U.S.C. § 2701. They seek a declaration that they are therefore not liable for any costs related to clean-up of the Facility. Alternatively, Plaintiffs challenge the validity of the Part 9 Subpart B Regulations, both facially and "as applied," on the rationale that Defendants are requiring Plaintiffs to implement a plan of operations that exceeds the mandates prescribed under Texas law.

Plaintiffs assert federal question jurisdiction under 28 U.S.C. § 1331. In the motion before the Court, the Federal Defendants argue for dismissal under Rule 12(b)(1) because the Court lacks subject matter jurisdiction to hear Plaintiffs' claims. They argue (1) that sovereign immunity has not been waived; (2) that the Administrative Procedure Act does not act to waive sovereign immunity because Plaintiffs have neither obtained final agency action nor exhausted their administrative remedies; (3) that Plaintiffs' claims are not ripe for review under Article III of the United States Constitution; and (4) that Plaintiff's suit is barred by the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"). The Court does not reach the Federal Defendants' final two arguments.

## II. RULE 12(b)(1) STANDARD

■ To defend a motion for dismissal under Rule 12(b)(1), the Plaintiff has the burden of demonstrating subject matter jurisdiction. *Boudreau v. United States*, 53 F.3d 81, 82 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 771, 133 L.Ed.2d 724 (1996); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 n. 48 (1980 & Supp.1997). The question of subject matter jurisdiction is an issue for the court. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).

■ Under Fifth Circuit law, a court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Robinson v. TCI/US West Communications Inc.*, 117 F.3d 900, 904 (5th Cir.1997); *Williamson*, 645 F.2d at 413. Thus, the existence of disputed material facts "will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* The Court's jurisdictional findings of fact are reviewed for clear error. *Robinson*, 117 F.3d at 904.

## III. SUBJECT MATTER JURISDICTION (FEDERAL DEFENDANTS)

■ Under well-established law, the United States is immune to suit unless that immunity is expressly waived by Congress. *E.g., United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607 (1980). If a suit against a federal agency is in effect a suit against the United States, the agency may claim the same limited immunity. *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963). As Plaintiffs concede, neither the statute defining federal question jurisdiction, 28 U.S.C. § 1331, nor the Declaratory Judgment Act, 28 U.S.C. § 2201, operate in and of themselves to waive sovereign immunity or to confer jurisdiction on the federal court. *See Shanbaum v. United States*, 32 F.3d 180, 182 (5th Cir.1994); *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1385 (5th Cir.1989).

Accordingly, the NPS is immune from suit unless Plaintiffs can show independent grounds for jurisdiction arising "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In Plaintiffs' Amended Complaint, filed May 30, 1997, Plaintiffs assert such jurisdiction under three statutes: (1) the NPS organic statute, 16 U.S.C. §§ 19jj to 19jj–4 (1990); (2) the Administrative Procedure Act, 5 U.S.C. §§ 701–06 (1966); and (3) the Padre Island National Seashore enabling statute, 16 U.S.C. § 459d *et seq.* (1962).

A. *National Park Service Organic Statute (Park System Resource Protection)*

■ Plaintiffs contend in error that federal jurisdiction arises under Subchapter IIIB,

Sections 19jj to 19jj–4, of the National Park Service organic statute. That subchapter, entitled "Park System Resource Protection," provides a vehicle by which the Attorney General of the United States may recover damages against "any person who destroys, causes the loss of, or injures any park system resource." 16 U.S.C. § 19jj–1 (1990).

No private cause of action is contemplated by that subsection. Indeed, the Fifth Circuit has held that the National Park Service organic statute in its entirety creates neither a private cause of action nor a right of judicial review. *Dunn–McCampbell Royalty Interest, Inc. v. National Park Service,* 112 F.3d 1283, 1286 (5th Cir.1997) (affirming summary judgment in favor of the NPS). Federal subject matter jurisdiction over the Plaintiffs' dispute with the NPS over "owner or operator" status must arise, if at all, under the Administrative Procedure Act, 5 U.S.C. §§ 701–06 (1966) ("APA"). *See id.* at 1286–87.

### B. *Administrative Procedure Act: "Owner or Operator" Status*

The APA provides a right of action and waiver of sovereign immunity for judicial review of agency actions in suits seeking relief other than money damages. 5 U.S.C. § 702. To constitute grounds for federal jurisdiction under the APA, however, the decision reviewed must be a "final agency action" for which there is no other remedy in court. 5 U.S.C. § 704; *Voluntary Purchasing Groups,* 889 F.2d at 1385–86.

Plaintiffs argue that the NPS's determination that Plaintiffs are owners or operators under the Part 9, Subpart B Regulations constitutes a final agency action under the APA. The Court disagrees.

#### 1. Final Agency Action

■ A final agency action is one which "imposes an obligation, denies a right, or fixes a legal relationship." *Veldhoen v. United States Coast Guard,* 35 F.3d 222, 225 (5th Cir.1994). To determine whether an agency action is final for purposes of the APA, the Fifth Circuit applies the following test: (1) is the action a definitive statement of the agency position; (2) does the action have the status of law with penalties for noncompliance; (3) is the impact on plaintiff direct and immediate; and (4) does the agency expect immediate compliance. *Dunn–McCampbell,* 112 F.3d at 1288.

■ In this case, the crux of the NPS decision is that Plaintiffs are obliged generally to subject themselves to the Part 9, Subpart B Regulations. Though the NPS's opinion that Plaintiffs are owners or operators of the Facility may well ultimately serve as the foundation for a definitive position by the agency, at this time it is an opinion as to status only. An "obligation to defend oneself before an agency is not the type of obligation that creates final agency action." *Veldhoen,* 35 F.3d at 226 ("An attack on the authority of an agency to conduct an investigation does not obviate the final agency action requirement."); *see Aluminum Co. v. United States,* 790 F.2d 938, 942 (D.C.Cir.1986) ("It is firmly established that agency action is not final merely because it has the effect of requiring a party to participate in an agency proceeding.").

Furthermore, whether the view expressed in the NPS correspondence is characterized as an opinion or a decision, it does not and cannot have penalties for noncompliance in and of itself. *See Jobs, Training and Services, Inc. v. East Tex. Council of Gov'ts,* 50 F.3d 1318, 1324 (5th Cir.1995) (finding no finality where a decision might have the status of law if enforced, in the absence of actual enforcement); *see also Resident Council of Allen Parkway Village v. HUD,* 980 F.2d 1043, 1056–57 (5th Cir.) (declining to find agency opinion letters to constitute final action), *cert. denied,* 510 U.S. 820, 114 S.Ct. 75, 126 L.Ed.2d 43 (1993). In the Cook Letter, the NPS Regional Director informed Plaintiffs that "our legal counsel has advised us, and the Railroad Commission of Texas concurs, that [the Facility has] been the responsibility of [Plaintiffs] under lease agreement, effective December 1, 1989." Cook Letter, at 1–2. The letter goes on to discuss modifications to Plaintiffs' proposed plan of operations and ends by threatening suspension of Plaintiffs' operations unless a "substantially complete" plan of operations is submitted. *Id.* at 2–4. Nothing in that letter has the effect of *enforcing* compliance; it merely states, albeit strongly, the agency's

position. *See Jobs,* 50 F.3d at 1325 ("[A]gencies ... should be free to explore every potentially legitimate basis for carrying out the duties assigned to them by Congress.").

As to whether the impact on Plaintiffs is direct and immediate, and whether the agency expects immediate compliance, the lengthy period of correspondence without imposition of any penalty speaks for itself The evidence includes letters from December 1, 1989 (in which Plaintiffs inform the NPS that they had taken over operation of the Facility from Oryx), to January 8, 1997 (in which the NPS reiterates its January 1994 opinion in the Cook Letter that Plaintiffs are the owners or operators of the Facility). The Court has no evidence that to the date this lawsuit was filed, the NPS has ever forced any immediate action whatsoever. Even the Plaintiffs testify that "NPS has not approved any plan of operation for [Plaintiffs] and [Plaintiffs have] not performed any acts under such a plan." Pierce Aff. ¶ 7.

Plaintiffs point to no NPS citation, no penalty or fine, no denial of a plan of operations, no suspension of activities at the Facility, no order of reclamation, no order of remediation.[2] *See Dunn–McCampbell,* 112 F.3d at 1288 (noting that NPS denial of a plan of operations or blockage of access to the plaintiff's site of operations "might" constitute final agency action). As discussed above, one or more of those actions have been threatened. None, however, has been implemented.[3] *See First Fed. Sav. Bank & Trust v. Ryan,* 927 F.2d 1345, 1354 (6th Cir.), *cert. denied,* 502 U.S. 864, 112 S.Ct. 187, 116 L.Ed.2d 148 (1991) ("Mere contemplation of a course of action does not constitute a final agency action.").

Instead, the NPS has laid a necessary but preliminary foundation for all the possible actions and penalties that may later be ordered.[4] Appeal of such intermediate deci-

sions is expressly contemplated by the APA to wait upon a final action. *See* 5 U.S.C. § 704 (providing that "a preliminary, procedural, or intermediate agency action or ruling" is subject to review at the time the final agency action itself is reviewed); *cf. DCP Farms v. Yeutter,* 957 F.2d 1183, 1188 (5th Cir.) (observing that a USDA decision limiting entities that were eligible for farm subsidies was not a final action in the absence of a ruling on the whole of plaintiff's farm application), *cert. denied,* 506 U.S. 953, 113 S.Ct. 406, 121 L.Ed.2d 331 (1992). Declaring an entity to be an owner or operator under the Part 9, Subpart B Regulations does not in and of itself meet the finality test for judicial review.

Plaintiffs direct the Court to a Notice of Federal Interest for an Oil Pollution Incident, dated February 18, 1994. *See* Amd. Comp. ¶ 34 and Exh. Q. This notice was issued, however, by the United States Coast Guard, which is not a party to this action. Plaintiffs also allege direct monetary damage—that they have been required to spend in excess of $249,000 on "clean-up activities, studies, and remediation plans for the Facility," and that cost estimates for completed restoration are approximately $1 million. Pierce Aff. ¶ 14. The evidence before the Court, however, links neither the alleged expenditures nor the estimate to any action by the NPS. Instead, the Court has before it a citation, dated February 16, 1994, from the Texas Railroad Commission ("TRC"). Amd. Comp., Exh. P. In that document, Plaintiffs are "cited for violations of Statewide rules" and ordered to conduct sample analysis, to "delineate the area of contamination," and to draft a remediation plan to be submitted to the TRC. *Id.* The TRC, like the Coast Guard, is not a defendant here. Although it remains unclear what prompted Plaintiffs' expendi-

---

2. Although the NPS has expressed dissatisfaction with Plaintiffs' proposed plan of operations for the Facility, the plan has not been rejected. *Compare* 36 C.F.R. § 9.37(b)(1) (providing for notification of rejection of a plan of operations) *with* 36 C.F.R. § 9.37(b)(3) (providing for notification of required modification of a plan of operations).

3. The Cook Letter attests that suspension was merely a threat by informing Plaintiffs that

should a suspension order issue, Plaintiffs would be informed of the appropriate appeals process. Cook Letter, at 4.

4. Possible actions and penalties in the Regulations include requiring reclamation after completion of operations, 36 C.F.R. § 9.39; revoking the plan of operations, 36 C.F.R. § 9.51; and suspension of operations, *id.*

tures and estimate, Plaintiffs point the Court to no final remediation order or citation by the NPS from which they seek relief.[5] Under the facts of this case, no final agency action exists.

### 2. Exhaustion of Agency Appeals

 Even if a designation of owner or operator status could be construed as a final agency action, the Plaintiffs' suit against the Federal Defendants would still be dismissed for failure to exhaust administrative remedies. The Part 9, Subpart B Regulations provide an appeal process, and that process must be exhausted under the APA before the result is subject to judicial review. 5 U.S.C. § 704; *Darby v. Cisneros,* 509 U.S. 137, 147, 113 S.Ct. 2539, 2545, 125 L.Ed.2d 113 (1993); *see Townsend v. United States Dept. of Justice INS,* 799 F.2d 179, 181 (5th Cir.1986) (holding that where exhaustion is statutorily mandated, the requirement is jurisdictional).

Plaintiffs do not argue or present evidence that they pursued and completed the appeals process. Rather, they invoke the futility exception to the exhaustion requirement. The district court may exercise jurisdiction, regardless of exhaustion of administrative remedies, if pursuit of those remedies would be futile. *Hall v. National Gypsum Co.,* 105 F.3d 225, 232 (5th Cir.1997).

In this case, Plaintiffs contend that the NPS appeals process exists only for denial or revocation of a plan of operations; they argue that no possible appeal exists for a decision of "owner or operator" status. *See id.* at 232 (holding that exhaustion is futile where an ERISA plan review procedure had been abolished). The Court does not share Plaintiffs' interpretation of the relevant regulation.

Subsection 9.49 of the Part 9, Subpart B Regulations provides:

Any operator aggrieved by a decision of the Field Director *in connection with the regulations subpart* may file with the Field Director a written statement setting forth in detail the respects in which the decision is contrary to, or is in conflict with the facts, the law, or these regulations, or is otherwise in error.

36 C.F.R. § 9.49(a) (emphasis added).

Broader, more inclusive language could not be written. Although some paragraphs of subsection 9.49 do indeed deal with issues related to plans of operation,[6] the authorizing paragraph itself is not limited in any way. Furthermore, Plaintiffs were on actual notice that the appeals process is not restricted to denial of a plan of operation. *See* Cook Letter (informing Plaintiffs of appeal available for suspension of operations). If the Plaintiffs believed that they were suffering from an adverse, final agency action at the hands of the NPS, they could have and most certainly should have pursued the formal appeal process provided by the NPS Regulations.

### 3. Conclusion of APA Analysis

The Court holds, therefore, that Plaintiffs have sought judicial intervention prematurely under the APA. The Court is cognizant of the burden it places on Plaintiffs in predicating relief on renewal of the administrative process. *See Dunn–McCampbell,* 112 F.3d at 1289–90 (Jones, J., dissenting). However, it is the role of the judiciary to facilitate the efficiency of the NPS in the hope that it will reach an equitable resolution; the courts should intervene only after Plaintiffs have fully complied with Congress's guidelines. *See American Gen. Ins. Co. v. FTC,* 496 F.2d 197, 200 (5th Cir.1974) ("Congress did not contemplate a grant of jurisdiction to the courts to prevent abuse or misuse of administrative power by prior restraint of the

---

**5.** Plaintiffs also allege monetary damage in that the NPS "drew down" a $200,000 Letter of Credit ("LC") posted as bond for Plaintiffs' PINS operations; they argue that the action supports finality. On examination of all the evidence, however, the Court finds that the LC funds were held in an NPS suspense fund pending Plaintiffs' renewal of the bond, which was about to expire. *See* Eubank Decl. ¶ 12. The Court further finds that those funds have been released. Eubank Decl. ¶ 13. In any event, the events related to

the drawing down of the LC occurred after this lawsuit was filed.

**6.** For example, the record on appeal must include, among other things, the official files on the applicable plan of operations, 36 C.F.R. § 9.49(b), (c). The appeals subsection also provides that with regard to a proposed plan of operations, the decision of the Director is final agency action. 36 C.F.R. § 9.49(d).

exercise of such powers.") The Court recommends in the interest of governmental economy that the NPS provide Plaintiffs with every opportunity to prove that they are neither owners nor operators of the Facility before commencing any final action against them.

### C. *Padre Island National Seashore Statute*

As a final argument, Plaintiffs assert that even if the Court finds no jurisdiction under the two previous theories, the Court may still hear a challenge to the constitutional or statutory validity of the Part 9, Subpart B Regulations as a whole. In that challenge, Plaintiffs would argue that the Regulations themselves, "facially" and "as applied" to Plaintiffs, exceed NPS authority under the Padre Island National Seashore enabling statute, 16 U.S.C. § 459d *et seq.* ("PINS statute").

■ Federal jurisdiction does not arise, however, from the PINS statute. In *Dunn–McCampbell Royalty Interest Inc. v. National Park Service,* decided this year, the Fifth Circuit held unequivocally that the PINS statute neither provides for judicial review nor creates a private right of action. *Dunn–McCampbell,* 112 F.3d at 1286. The sole avenue to the federal courts for a "facial" or "as applied" challenge to the validity of the Part 9, Subpart B Regulations is via the APA. *Id.* For a "facial" challenge to agency regulations under the APA, final agency action is not an issue; publication of the regulations is the required predicate. *Id.*

■ In this case, however, as in *Dunn–McCampbell,* Plaintiffs "facial" claim is time-barred A civil action against the United States is barred unless brought within six years of accrual. 28 U.S.C. § 2401(a); *Dunn–McCampbell,* 112 F.3d at 1286. For an APA challenge to an agency's regulations as promulgated, the limitations period begins to run when the agency publishes the regulation in the Federal Register. *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *Dunn–McCampbell,* 112 F.3d at 1286. Because more than six years has elapsed between the time that the Part 9, Subpart B Regulations were published (1979) and the date the complaint was filed (1997), the statute of limitations operates to bar Plaintiffs' "facial" challenge to the Regulations.

■ Such a bar is jurisdictional in nature. Under well-established law, the applicable statute of limitations is a component necessary to a sovereign's consent to waive immunity. *Id.* at 1287; *see also U.S. v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990). Failure to file a timely suit against the United States, therefore, "operates to deprive federal courts of jurisdiction." *Dunn–McCampbell,* 112 F.3d at 1287 (citing *Sisseton–Wahpeton Sioux Tribe v. United States,* 895 F.2d 588, 592 (9th Cir.), *cert. denied,* 498 U.S. 824, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990)). Plaintiffs' "facial" challenge to the Part 9, Subpart B Regulations must therefore be dismissed for lack of subject matter jurisdiction.

Plaintiffs bring also a challenge to the Part 9, Subpart B Regulations "as applied." To mount such a challenge, Plaintiffs must show that within six years prior to filing suit, the NPS exceeded its constitutional or statutory authority with a final agency action directed specifically toward Plaintiffs. *Id.* at 1287. As the Court has held herein, no such final agency action directed at Plaintiffs is present in this case. Plaintiffs' "as applied" challenge must similarly be dismissed.

### D. *Defendant John E. Cook*

■ Defendant John E. Cook is sued here in his official capacity as Regional Director for the Southwest Region of the NPS, for acts within the scope of his official employment. The claims against him are therefore claims against the sovereign. *Southern Sog, Inc. v. Roland,* 644 F.2d 376, 380 (5th Cir.1981); *Unimex Inc. v. HUD,* 594 F.2d 1060, 1061–62 (5th Cir.1979). Accordingly, the Court's analysis as to the NPS applies to Cook as well.

### IV. SUPPLEMENTAL JURISDICTION (ORYX)

Oryx asks the Court, in the event of dismissal of the Federal Defendants, to decline to exercise supplemental jurisdiction over Plaintiffs' state-law claims against them. *See*

28 U.S.C. § 1367(c)(3). The Court has no original jurisdiction over the fraud and contract claims against Oryx.[7]

■ The general rule in this Circuit is to dismiss state claims when the federal claims to which they are pendent are dismissed. *Parker & Parsley Petroleum Co. v. Dresser Indus.,* 972 F.2d 580, 585 (5th Cir.1992); *Wong v. Stripling,* 881 F.2d 200, 204 (5th Cir.1989) This is not a case in which dismissal occurs on the "eve of trial" or otherwise subverts judicial economy or procedural fairness to the parties.[8] *See Newport Limited v. Sears, Roebuck and Co.,* 941 F.2d 302, 307–08 (5th Cir.1991), *cert. denied,* 502 U.S. 1096, 112 S.Ct. 1175, 117 L.Ed.2d 420 (1992). Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiffs' claims against Oryx in this case. *Parker,* 972 F.2d at 590 (finding abuse of discretion in a non-diversity case where the district court tried state claims after early dismissal of the sole federal cause of action).

## V. CONCLUSION

For the reasons stated above, the Federal Defendants' Motion to Dismiss Plaintiffs' Amended Complaint is **GRANTED.** All claims against Defendants National Park Service and John E. Cook are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1).

Oryx's Conditional Motion to Dismiss is similarly **GRANTED.** All claims against Oryx are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction and with discretionary denial of supplemental jurisdiction. 28 U.S.C. § 1367(c)(3).

Final Judgment shall issue separately.

SO ORDERED.

---

7. Because Plaintiffs and Oryx are Delaware corporations, diversity is not present. 28 U.S.C. § 1332. Plaintiffs plead no federal cause of action against Oryx other than their request for declaratory relief.

8. This case is approximately 9 months old. Trial is scheduled for July 1998. The solo substantive briefing has been in conjunction with the motions to dismiss, and the discovery period does not close until April 1998.