REVISED, April 28, 1998

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 96-40994
_____

STEPHEN E STOCKMAN, Member of Congress of the
United States for the Ninth Congressional
District of Texas; FRIENDS OF STEVE STOCKMAN;
JOHN HART, Treasurer; STOCKMAN FOR CONGRESS;
STEPHEN E STOCKMAN, As Treasurer,

                    Plaintiffs - Appellants,

versus


FEDERAL ELECTION COMMISSION,


                    Defendant - Appellee.


Appeal from the United States District Court
For the Eastern District of Texas

March 27, 1998

Before EMILIO M. GARZA, STEWART, and DENNIS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Stephen Stockman and his campaign organizations appeal from the district court's summary judgment in favor of the Federal Election Commission ("FEC" or "Commission"). Stockman claims that the FEC unduly delayed its investigation of him and his campaign. Because the district court lacked jurisdiction to hear Stockman's unreasonable delay claim, we modify the district court's judgment and affirm as modified.

Stockman's lawsuit against the FEC (and this appeal) arise out of an FEC investigation into Stockman's 1994 congressional campaign. The FEC investigation of Stockman centered around allegations made by one of Stockman's political opponents that Stockman and his campaign violated the Federal Election Campaign Act ("the Campaign Act" or "the Act"). *See* 2 U.S.C. §§ 431-456. The FEC's investigation, in turn, became the subject of Stockman's lawsuit.

The underlying facts of this case are undisputed. In late December 1993, a campaign consultant to John LeCouer, Stockman's opponent in the 1994 Republican primary for the Ninth Congressional District of Texas, filed an administrative complaint with the FEC.[1] The complaint against Stockman alleged that Stockman and his campaign violated the Campaign Act by publishing a newspaper, *The Southeast Texas Times*, out of Stockman's home without disclosing that it was related to his campaign and by circumventing campaign contribution limitations. The FEC designated this complaint "Matter Under Review 3847" and began the elaborate and detailed administrative process by which the agency must review all

---

[1] The Campaign Act creates an administrative process by which any person who believes that a violation of the Act has occurred may file a complaint with the FEC. *See* 2 U.S.C. § 437g(a)(1). The Campaign Act gives the FEC exclusive jurisdiction to investigate civil violations of the Act, *see* 2 U.S.C. § 437c(b)(1)("The Commission shall have exclusive jurisdiction with respect to the civil enforcement of [the Act].") and creates the exclusive civil remedy for enforcing the provisions of the Act. *See* 2 U.S.C. § 437d(e).

administrative complaints filed under the Campaign Act.[2]

Following a sixteen-month preliminary investigation, the FEC found reason to believe that Stockman violated the Campaign Act. *See supra* note 2. Consistent with the requirements of the statute, the FEC provided Stockman with the factual position of the Commission and gave him the opportunity to respond to its analysis. The FEC also issued Stockman subpoenas to produce documents and orders to submit written answers to interrogatories. Over the next several months, Stockman repeatedly asked the FEC for extensions of time in which to file his responses. When Stockman finally did respond to the FEC interrogatories, many of his answers were non-

---

[2]      Within 5 days of receiving a formal complaint, the FEC must notify in writing the person alleged to be in violation of the Act. Unless the FEC dismisses the complaint on its own, it must give the respondent 15 days to demonstrate why the FEC should dismiss the complaint without any investigation. If 4 members of the Commission (out of 6 total) vote affirmatively that there is a reason to believe that the respondent violated the Act ("reason to believe" finding), the Commission must conduct an investigation of the alleged violation. 2 U.S.C. § 437g(a)(2). The FEC must notify the respondent and set forth its factual basis for the reason to believe finding.

Following its investigation, the general counsel of the FEC must recommend to the Commission whether it should find probable cause to believe that the respondent violated the Act ("probable cause" finding). 2 U.S.C. § 437g(a)(3). The FEC must notify the respondent of this recommendation, transmit a brief stating the legal and factual position of the Commission, and give the respondent time to respond. After receiving the response of the respondent, the Commission must vote on whether to make a finding of probable cause, with the affirmative vote of 4 members needed to make such a finding. If the Commission finds probable cause that the respondent violated the Act, it must attempt to correct or prevent such violation for at least 30 days by conference, conciliation, and persuasion, and to enter into a conciliation agreement with any person involved. 2 U.S.C. § 437g(a)(4). If the Commission is unable to reach a conciliation agreement with the respondent, it may bring))again, only with the affirmative vote of 4 members))a *de novo* civil suit in federal district court to enforce the provisions of the Act. 2 U.S.C. § 437g(a)(6)(A).

responsive.[3]  Stockman did not seek an expedited investigation of his campaign from the FEC; instead, he requested that the FEC dismiss the complaint against him without further investigation.[4] Over Stockman's increasing protestations, the FEC continued the investigation of Stockman's campaign pursuant to its statutory requirements.

During this same period (late July and August 1995), several newspaper articles appeared in regional and local papers discussing the FEC's investigation of Stockman.  The first article that discussed the FEC investigation appeared in the Washington D.C. newspaper Roll Call ("Roll Call article") and stated that the FEC refused to confirm or deny the existence of an investigation of Stockman.[5]  The FEC's refusal to confirm or deny an investigation is significant because the Campaign Act prohibits the FEC or any person from making an FEC notification or investigation public without the written consent of the person notified or the person under investigation ("confidentiality provision").  *See* 2 U.S.C. §

---

[3]     Because Stockman's responses to the FEC interrogatories are still under seal and Stockman has refused to give his consent to allow any information collected in the FEC investigation to be made public, we decline to quote from Stockman's responses.  *See* 2 U.S.C. § 437g(a)(12(A) ("Any notification . . . shall not be made public . . . without the written consent of the person receiving such notification or the person with respect to whom such investigation is made.").

[4]     Stockman filed two motions with the FEC to dismiss the investigation.  Neither motion sought or even mentioned an expedited review by the FEC, and neither motion even alleged that Stockman was concerned with the delay.

[5]     The Roll Call article stated that "FEC complaints are not made public until a case is closed, and the commission will neither confirm nor deny that an investigation [of Stockman] is under way."

437g(a)(12). In addition, the article indicated that the only direct confirmation of the FEC investigation came from the Stockman campaign itself:

> Stockman chief of staff Jeff Fisher acknowledged Wednesday that the FEC is formally investigating a complaint filed by a former Stockman political rival concerning the Southeast Texas Times . . . .
>
> * * *
>
> Fisher said the current investigation is limited to the circumstances surrounding publications of the Southeast Texas Times. He blamed a "disgruntled" former rival of Stockman's named Steve Clifford for the complaint.

The article also stated that John LeCouer confirmed that he filed the complaint with the FEC.

The following day, the Houston Chronicle picked up the Stockman story from the Roll Call article. Again, it appears that the Stockman campaign, as well as the information in the Roll Call article, confirmed the existence of the FEC's investigation of Stockman. The article stated that "Stockman's chief of staff, Jeff Fisher, also confirmed that an investigation was under way." In the article, an FEC spokesman acknowledged that the agency received a complaint about Stockman's campaign but refused to comment on whether the FEC was investigating Stockman. The article noted specifically that "the FEC policy prohibits the confirmation of any agency probes until they are resolved."[6]

---

[6] Subsequent articles about the FEC investigation appeared in local Texas newspapers and based their stories largely on the Roll Call and Houston Chronicle articles. Additionally, the local articles quoted Stockman extensively and Stockman opined that the FEC complaint was a politically motivated attack by his opponents. Significantly, the articles explicitly stated that consistent with federal law, the FEC would neither confirm nor deny whether the agency was conducting an investigation of Stockman.

In November 1995, Stockman filed suit against the FEC in the Eastern District of Texas. Again, Stockman did not seek an expedited investigation by the FEC; instead, he requested that the FEC be enjoined from further investigation of his campaign. Stockman claimed, among other things, that the FEC unduly delayed its investigation of him in violation of the Campaign Act and the Administrative Procedure Act ("APA") ("unreasonable delay claim"). In a preliminary order, the district court held that dismissal of the investigation was not an available remedy under the APA or the Campaign Act, but that the court had jurisdiction to compel the agency to act if it determined that the investigation was unreasonably delayed.[7] The district court then requested from the FEC responses to seventeen detailed interrogatories regarding the action it had taken in the Stockman investigation up to that point. After reviewing the FEC's submission, the court granted summary judgment in favor of the FEC, finding no unreasonable delay in the investigation.

On appeal, Stockman contends that "while the district court selected the correct legal test to resolve the issue before it, the court erred in according far too little weight to the urgent need for F.E.C. investigations to be resolved within the applicable election cycle." Stockman then "urges this Court to conclude that absent extraordinary circumstances not indicated by the summary

_____

[7] Stockman does not challenge the district court's conclusion that dismissal of the investigation is not a possible remedy. *See United States v. Popovich*, 820 F.2d 134, 138 (5th Cir. 1987) ("We conclude that the plain language of [the APA] provides no authority for dismissing the action of the HHS.").

judgment record in this case, failure to resolve an F.E.C. investigation within the election cycle is *per se* an unreasonable delay that may be properly reviewed and remedied" by any federal court in the country. The FEC argues that (1) Stockman has no standing to bring his claim of unreasonable delay, and (2) the Campaign Act precludes judicial review of Stockman's claim.

II

Because Stockman bases much of his unreasonable delay claim on his repeated assertions that the FEC's investigation was publicized in violation of the Campaign Act ("wrongful publication claim"), it is to those assertions we first turn. Stockman brought his wrongful publication claim before the district court, and that court))in an earlier order))dismissed it for lack of jurisdiction and failure to state a claim. Significantly, Stockman neither appealed the district court's dismissal of his wrongful publication claim, nor even acknowledged to this Court that the district court explicitly rejected his claim.

The FEC argues in its *Motion to Strike Stockman's Reply Brief* that Stockman is precluded from bootstrapping his unsubstantiated allegation of wrongful publication to his unreasonable delay claim because he failed to appeal the district court's holding on the wrongful publication claim or challenge it in his briefs. We agree. *See* FED. R. APP. P. 28(a) ("The brief of the appellant must contain . . . [a] statement of the issues presented for review."). "It is established law that matters which have not been adequately briefed are precluded from consideration on appeal." *Bank One,*

-7-

*Texas, N.A. v. Taylor*, 970 F.2d 16, 27 (5th Cir. 1992); *see also Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc.*, 729 F.2d 1530, 1539 n.14 (5th Cir. 1984) (granting motion to strike portion of appellant's reply brief on the grounds that "[a]n [appellant's] original brief abandons all points not mentioned therein.") (quoting *Martin v. Atlantic Coast Line R.R.,* 289 F.2d 414, 417 n.4 (5th Cir. 1961)) (alteration in original).

In addition to not arguing the issue in his briefs, Stockman does not even suggest that he *intended* to appeal the district court's order dismissing his wrongful publication claim. Instead, in direct contradiction to the district court's findings, Stockman simply stated at oral argument that it was "uncontroverted" and "[un]refuted" that the investigation was wrongfully publicized. We reject this assertion out of hand. Moreover, to the extent it relates to his claim of standing for the unreasonable delay claim, we are convinced that Stockman's allegation of wrongful publication is wholly without merit.[8] The district court found that Stockman alleged no facts to support his claim that the FEC or anyone else violated the confidentiality provision. The court correctly noted that Stockman failed to produce a "modicum of corroborating evidence" that the FEC or anyone else breached the confidentiality

---

[8] In dismissing Stockman's claim under the confidentiality provision, the district court found that "there has been no violation of the Act's confidentiality provision and the Plaintiffs have suffered no cognizable injury which would give them standing [to bring such a claim]." The district court also explained that "there is no evidence which indicates the FEC improperly leaked information to the media. Simple conjecture by the Plaintiffs' counsel without a modicum of corroborating evidence will not suffice to withstand dismissal."

provision, and that Stockman's campaign was (at least in part) the source of the disclosure. It is undisputed that in each newspaper article, consistent with the confidentiality provision of the Campaign Act, the FEC declined to confirm or discuss whether it was investigating Stockman. *See* 2 U.S.C. § 437g(a)(12). In addition, it was Stockman's own campaign manager who confirmed the investigation in the first article (the Roll Call article) and who provided information about the investigation.

The district court also held that even if LeCouer (Stockman's political opponent) went to the press with the contents of his FEC complaint, the plain language of the Campaign Act prohibits only the disclosure of an FEC "investigation," not the filing of a complaint. *See* 2 U.S.C. § 437g(a)(12). Stockman does not challenge this conclusion, and we need not address it. *Compare Lind v. Grimmer*, 30 F.3d 1115, 1117-21 (9th Cir. 1994) (holding that the confidentiality provision in a similar Hawaii campaign finance statute was unconstitutional to the extent that it prevented a complainant from disclosing her complaint to the press) *and FEC Advisory Opinions*[9] 1994-32, ¶ 6130 & 1995-1, ¶ 6138 n.3 (holding that disclosure of complaint by the complainant would not violate the confidentiality provision found in section 437g(a)(12) of the Act or in Commission regulation 11 C.F.R. § 111.21.), *with*

---

[9] FEC Advisory Opinions are authorized by section 437f of the Campaign Act. *See* 2 U.S.C. § 437f. The Advisory Opinions may be relied upon affirmatively by any person involved in the specific transaction or any materially indistinguishable activity. *See* 2 U.S.C. § 437f(c)*; see also Weber v. Heaney*, 793 F. Supp. 1438 (D. Minn. 1992), *aff'd* 995 F.2d 872 (8th Cir. 1993).

11 C.F.R. § 111.21 ("[N]o complaint filed with the Commission . . . shall be made public by the Commission or by any person . . . .").

Stockman's recourse, if he believed that the confidentiality provision of the Campaign Act was violated, was to follow the administrative procedures set forth in the Act and file a complaint with the FEC. *See* 2 U.S.C. § 437g(a)(1). Consistent with the intent and structure of the statute, the FEC would have been able to investigate and, if necessary, prevent or remedy any violation of the Act. Furthermore, the Campaign Act specifically provides that the remedy for a violation of the confidentiality provision is a $2,000 fine, not an expedited investigation as Stockman now seeks. *See* 2 U.S.C. § 437g(a)(12)(B). Because Stockman failed to appeal the district court's dismissal of his wrongful publication claim and failed to follow the administrative procedures for resolving such a complaint, he cannot bring his unsubstantiated assertions before this Court.

## III

We now turn to Stockman's claim that the district court must apply a presumption that a two-year investigation is *per se* unreasonable under the Campaign Act.[10] While the district court

---

[10] We note that the D.C. Circuit explicitly rejected this claim when an administrative complainant brought suit under section 437g(a)(8) of the Campaign Act. *See Rose v. FEC*, Nos. 84-5701, 84-5719, 1984 WL 148396 (D.C. Cir. 1984). The court explained that "the district court . . . incorrectly applied a 'presumption' that the Commission has acted 'contrary to law' whenever it fails to resolve a complaint within the two-year period between elections. The Act makes absolutely no reference to such a presumption." *Id.* at *2; *see also FEC v. Rose*, 806 F.2d 1081, 1084 (D.C. Cir. 1986)

-10-

held that Stockman had standing to bring such a suit and that the APA conferred jurisdiction to consider the extent of the FEC's delay, it ultimately concluded on the merits that the FEC's investigation was not unreasonably delayed. The FEC challenges the district court's holding on both standing and jurisdiction. Although we have considerable doubt that Stockman has satisfied his burden of demonstrating standing to challenge the FEC's delay))either APA[11] or constitutional standing[12])) we need not resolve

_____

(discussing same). Because we ultimately dismiss Stockman's claim for lack of jurisdiction, we express no opinion as to its merits.

[11] The APA "requir[es] the litigant to show, at the outset of the case, . . . that the interest he seeks to vindicate is arguably within the 'zone of interests to be protected or regulated by the statute in question.'" *Office of Workers' Compensation Programs v. Newport News*, 514 U.S. 122, 127, 115 S. Ct. 1278, 1283, 131 L.Ed.2d 160 (1995) (quoting *Associations of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153, 90 S. Ct. 827, 830, 25 L.Ed.2d 184 (1970)); *cf. Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 107 S. Ct. 750, 755, 93 L.Ed.2d 757 (1987) ("Congress, in enacting § 702, [did] not intend[] to allow suit by every person suffering injury in fact."). Although the "[zone of interest] test is not meant to be especially demanding," *see Clarke*, 479 U.S. at 399-400, 107 S. Ct. at 757, Stockman does not even address it in his briefs. Moreover, because the underlying statute precludes judicial review))a factor that "provides a useful reference point" for determining APA standing))we question whether Stockman could satisfy the APA test. *See id.; see also* WRIGHT, MILLER, & COOPER, 13 FEDERAL PRACTICE AND PROCEDURE § 3531.1 (1997 Supplement) ("[T]he Court require[s] that judicial review not be precluded by statute, but this requirement is not one of standing as such.").

[12] The D.C. Circuit recently explained that the Campaign Act "does not confer standing" and that a plaintiff cannot "establish standing merely by asserting that the FEC failed to process its complaint in accordance with law." *Common Cause v. FEC*, 108 F.3d 413, 418-19 (D.C. Cir. 1997). Stockman argued throughout his reply brief and oral argument that his injury stemmed from the wrongful publication of the investigation. *See supra* note 8. In light of the fact that the publication did not come from the FEC (and came at least in part from Stockman himself), Stockman would have difficulty in demonstrating that his injury))if he suffered one at all, *cf. Laird v. Tatum*, 408 U.S. 1, 92 S. Ct. 2318, 33 L.Ed.2d 154

-11-

Stockman's claim of standing before we consider the district court's subject matter jurisdiction. *See, e.g., Block v. Community Nutrition Inst.*, 467 U.S. 340, 353 n.4, 104 S. Ct. 2450, 2457 n.4, 81 L.Ed.2d 270 (1984) ("Since congressional preclusion of judicial review is in effect jurisdictional, we need not address the standing issues decided by the Court of Appeals in this case."); *Marathon Oil Co. v. Ruhrgas, A.G.*, 115 F.3d 315, 318 (5th Cir. 1997) ("We must be ever mindful that any rule or decision allowing a federal court to act without subject matter jurisdiction conflicts irreconcilably with basic principles of federal court authority."); *Kirby Corp. v. Pena*, 109 F.3d 258, 270 (5th Cir. 1997).

Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims. *See Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994). It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking. "This is the 'first principle of federal jurisdiction.'" *Id.* (quoting HART & WECHSLER, THE FEDERAL COURTS AND THE

---

(1972) (holding that plaintiff did not have standing to challenge Army's intelligence-gathering investigation because it did not threaten cognizable interest of the plaintiffs)))was "fairly traceable to the defendant's allegedly unlawful conduct." *Allen v. Wright*, 468 U.S. 737, 751, 104 S. Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *see also J. Roderick MacArthur Found. v. FBI*, 102 F.3d 600, 606 (D.C. Cir. 1996) (holding that Foundation did not have standing to challenge FBI's maintenance of records because the Foundation itself disclosed the existence of the records and the injury "appears to have been self-inflicted"). Nonetheless, we leave the question as to whether the person under FEC investigation could establish standing under some set of circumstances for another day.

FEDERAL SYSTEM 835 (2d ed. 1973)); *see also Telecommunications Research and Action Center v. FCC* (*"TRAC"*), 750 F.2d 70, 75 (D.C. Cir. 1984) ("Jurisdiction is, of necessity, the first issue for an Article III court."). As the party asserting federal jurisdiction, Stockman bears the burden of demonstrating that jurisdiction is proper. *See Epps v. Bexar-Medina-Atascosa Counties Water Improvement Dist. No. 1*, 665 F.2d 594, 595 (5th Cir. 1982).

Stockman concedes that the Campaign Act does not create a cause of action for his claim, that there are no reported cases in which the person under FEC investigation has brought an unreasonable delay claim against the FEC, and that the Campaign Act provides for judicial review of unreasonable delay claims only in the District of Columbia. *See* 2 U.S.C. § 437g(a)(8). Stockman thus recognizes that he can bring his claim, if at all, only under the Administrative Procedure Act.[13] *See* 5 U.S.C. §§ 701-706. Section 702 of the APA creates a cause of action for "[a] person suffering legal wrong because of agency action, or adversely

---

[13] As a preliminary matter, the FEC correctly notes, and Stockman concedes, that the APA does not create an independent grant of jurisdiction to bring suit. *See Califano v. Sanders*, 430 U.S. 99, 107, 97 S. Ct. 980, 985, 51 L.Ed.2d 192 (1977) (explaining that "the APA does not afford an implied grant of subject matter jurisdiction permitting judicial review of agency action"). Thus, the district court erred in concluding that the APA conferred jurisdiction over Stockman's claim. If section 702 of the APA creates a cause of action for Stockman's unreasonable delay claim, jurisdiction exists under the general federal question statute, not the APA. *See* 28 U.S.C. § 1331; *see also Dunn-McCampbell Royalty Interest, Inc. v. National Park Serv.*, 112 F.3d 1283, 1286 (5th Cir. 1997). The APA then serves as the waiver of sovereign immunity that allows a private party to sue the government (here, the FEC). *See Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994).

affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702.[14] "The relevant statute, of course, is the statute whose violation is the gravamen of the complaint." *Lujan v. National Wildlife Fed'n*, 497 U.S. 886, 882-83, 110 S. Ct. 3177, 3185-86, 111 L.Ed.2d 695 (1990); *see also Office of Workers' Compensation Programs v. Newport News*, 514 U.S. 122, 126, 115 S. Ct. 1278, 1283, 131 L.Ed.2d 160 (1995) ("[T]he qualification 'within the meaning of a relevant statute' is not an addition to what 'adversely affected or aggrieved' alone conveys; but is rather an acknowledgment of the fact that what constitutes adverse effect or aggrievement varies from statute to statute.").

The Supreme Court has cautioned that "before any review at all may be had [under the Administrative Procedure Act], a party must first clear the hurdle of § 701(a) [of the APA]." *Heckler v. Chaney*, 470 U.S. 821, 829, 105 S. Ct. 1649, 1654, 84 L.Ed.2d 714 (1985). Section 701 withdraws the cause of action if the relevant statute "preclude[s] judicial review [or] agency action is

---

[14] Section 706 governs the standards to be applied on review and provides in part that "[t]he reviewing court shall compel agency action unlawfully withheld or unreasonably delayed." *See* 5 U.S.C. § 706; *see also Heckler v. Chaney*, 470 U.S. 821, 829, 105 S. Ct. 1649, 1654, 84 L.Ed.2d 714 (1985). The district court erred, however, in basing Stockman's claim on section 706 because the provisions of the APA "do not declare self-actuating substantive rights, but rather, . . . merely provide a vehicle for enforcing rights which are declared elsewhere." *Perales v. Casillas*, 903 F.2d 1043, 1050 n.4 (5th Cir. 1990); *see also El Rescate Legal Servs. v. Executive Office of Immigration Review*, 959 F.2d 742, 753 (9th Cir. 1991) ("There is no right to sue for a violation of the APA in the absence of a 'relevant statute' whose violation 'forms the basis for [the] complaint.'" (quoting *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 883, 110 S. Ct. 3177, 3185-86, 111 L.Ed.2d 695 (1990)).

committed to agency discretion by law." 5 U.S.C. § 701(a); *see also Kirby Corp.*, 109 F.3d at 261. The FEC argues strenuously that the Campaign Act precludes judicial review of Stockman's unreasonable delay claim because the Act creates a cause of action for unreasonable delay for the complainant alone (Stockman is the respondent in the FEC investigation), and even then, the claim must be brought in the District of Columbia. Because the Campaign Act creates a detailed administrative process and sets forth the exclusive methods of judicial review under the Act, we agree, at the least, that the Campaign Act precludes judicial review of Stockman's unreasonable delay claim in this Circuit.

Our analysis begins with the strong presumption that Congress intends there to be judicial review of agency action. *See Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670, 106 S. Ct. 2133, 2135, 90 L.Ed.2d 623 (1986). Only upon a showing of "clear and convincing evidence" should the courts restrict access to judicial review. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 141, 87 S. Ct. 1507, 1511, 18 L.Ed.2d 681 (1967). The "clear and convincing" standard, however, has never been applied in the strict evidentiary sense. *See Block v. Community Nutrition Inst.*, 467 U.S. 340, 350, 104 S. Ct. 2450, 2456, 81 L.Ed.2d 270 (1984).

Instead, the presumption favoring judicial review "like all presumptions used in interpreting statutes, may be overcome by specific language or specific legislative history that is a reliable indicator of congressional intent." *See id.* at 349, 104 S. Ct. at 2455. We have found "the presumption favoring judicial

review overcome, whenever the congressional intent to preclude judicial review is 'fairly discernible' in the statutory scheme." *Kirby Corp.*, 109 F.3d at 262 (quoting *Block*, 467 U.S. at 351, 104 S. Ct. at 2456). Thus, to determine whether and to what extent the Campaign Act precludes judicial review of a particular claim, we look to the express language of the statute, as well as the structure of the statutory scheme, its legislative history, and the nature of the administrative action involved. *See Block*, 467 U.S. at 349, 104 S. Ct. at 2456.

The Campaign Act specifically states that "[t]he Commission shall administer, seek to obtain compliance with, and formulate policy with respect to, this Act . . . . The Commission shall have exclusive jurisdiction with respect to the civil enforcement of [the Act]." 2 U.S.C. § 437c(b)(1). The statute provides a strong basis for scrupulously respecting the grant by Congress of "exclusive jurisdiction" to the FEC: the FEC is entrusted with the exclusive power to investigate violations of the Act, and the Act creates a detailed administrative process that the FEC must follow in its investigations. *See supra* notes 1 & 2. "In the context of this appeal, the exclusive jurisdiction of the FEC extends to assure that the Commission's initial investigation is completed . . . before any judicial review is invoked." *See Carter-Mondale Reelection Comm., Inc. v. FEC*, 642 F.2d 538, 545 n.9 (D.C. Cir. 1980). While the Campaign Act grants the FEC power "to conduct investigations and hearings expeditiously," the Act does not create a deadline in which the FEC must act or create a private cause of

-16-

action to enforce this provision.[15]

The Campaign Act sets forth only two exceptions to the FEC's "exclusive jurisdiction" under the Act. *See* 2 U.S.C. § 437d(e) (emphasis added)("Except as provided in section 437g(a)(8) of this title, the power of the Commission to initiate civil actions . . . shall be the *exclusive civil remedy* for the enforcement of the provisions of this Act."). We agree with the D.C. Circuit that "Congress could not have spoken more plainly in limiting the jurisdiction of federal courts to adjudicate claims under [the Campaign Act.]" *Perot v. FEC*, 97 F.3d 553, 559 (D.C. Cir. 1996), *cert. denied* 117 S. Ct. 1692 (1997). Neither exception allows for judicial review of Stockman's claim in this Court.

The first exception provides for judicial review at the request of the FEC when it initiates a *de novo* civil action in federal district court to enforce the provisions of the Campaign Act.[16] *See* 2 U.S.C. §§ 437d(e), 437g(a)(6)(A). This section is the

_____

[15] Although not dispositive to the question at hand, we note that Congress deleted the requirement that the FEC conduct an "expeditious" investigation of "apparent violation[s]" of the Campaign Act when it amended the Act in 1979. *Compare* Federal Election Campaign Act Amendments of 1974, Pub. L. No. 93-443, § 208(a), 88 Stat. 1263, 1284 (1974), *with* Federal Election Campaign Act Amendments of 1979, Pub. L. No. 96-187, § 108, 93 Stat. 1339, 1358-59 (1980). Thus, the only remaining reference to "expeditious" appears in the "powers" section of the Act. *See* 2 U.S.C. § 437d(a).

[16] The FEC can bring a cause of action at the conclusion of its investigation only after the affirmative vote of four members and after it has failed to reach a conciliation agreement with the respondent. *See* 2 U.S.C. § 437g(a)(4)-(5). If the district court ultimately concludes that the respondent violated or is about to violate the Act, it may grant a permanent injunction or a fine of $5,000. *See* 2 U.S.C. § 437g(a)(6)(A)-(B). Alternatively, if the illegal contribution exceeds $5,000, the court can impose a fine up

only means by which the FEC can enforce the civil provisions of the Act; it also insures that a federal court, rather than the FEC, imposes the appropriate penalty on the respondent. *See FEC v. Ted Haley Congressional Comm.*, 852 F.2d 1111, 1116 (9th Cir. 1988) (stating that the district court's "assessment of civil penalties is discretionary"); *see also AFL-CIO v. FEC*, 628 F.2d 97, 100 (D.C. Cir. 1980). This provision is not relevant to the question at hand because the FEC has not yet sought enforcement against Stockman in district court.

The second exception provides for judicial review in the District of Columbia by creating a private cause of action for the administrative complainant. *See* 2 U.S.C. § 437g(a)(8). Section 437g(a)(8) states as follows:

> Any party aggrieved by an order of the Commission dismissing a complaint filed by such party under [the Campaign Act], or by a failure of the Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed, may file a petition with the United States District for the District of Columbia.

2 U.S.C. § 437g(a)(8). Section 437g(a)(8) is the only provision of the Campaign Act that provides for judicial review at behest of private parties))and although it creates a cause of action for unreasonable delay, it does so only in the District of Columbia and only for people who have filed an administrative complaint. *See Perot*, 97 F.3d at 559; *see also FEC v. Rose*, 806 F.2d 1081 (D.C. Cir. 1986).

---

to the amount of the contribution. If the violation is "knowing" and "willful," the court can impose criminal sanctions. *See* 2 U.S.C. § 437g(d).

-18-

Stockman cannot bring suit under section 437g(a)(8) because he never filed an administrative complaint with the FEC and he did not bring suit in the District of Columbia. *Cf. TRAC*, 750 F.2d at 229 ("It is well settled that even where Congress has not expressly stated that statutory jurisdiction is 'exclusive,' as it has here . . ., a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute."). Stockman's attempt to avoid the detailed administrative and investigative process set out in the Campaign Act by going directly to federal court in his home state cannot succeed. "Section 437g is as specific a mandate as one can imagine; as such, the procedures it sets forth))procedures purposely designed to ensure fairness not only to complainants but also to respondents))must be followed before a court may intervene." *Perot*, 97 F.3d at 559.

"Since the Act creates a public cause of action for the enforcement of its provisions and a private cause of action only under limited circumstances, th[e] maxim [*expressio unius est exclusio alterius*] would clearly compel the conclusion that the remedies created in [the Act] are the exclusive means to enforce the duties and obligations imposed by the Act." *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers*, 414 U.S. 453, 458, 94 S. Ct. 690, 693, 38 L.Ed.2d 646 (1974). In *Block v. Community Nutrition Institute*, the Supreme Court explained that an inference of intent to preclude judicial review under the APA could be drawn when the relevant statute specifically grants the right of

review to a particular class of persons not including the plaintiff. *See Block*, 467 U.S. at 349, 104 S. Ct. at 2456. "In particular, at least when a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded." *Id.*

The legislative history of the Campaign Act confirms that "[t]he delicately balanced scheme of procedures and remedies set out in the Act is intended to be the exclusive means for vindicating the rights and declaring the duties stated therein." 120 Cong. Rec. 35,314 (1974) (remarks of Congressman Hayes, Chairman of the Committee reporting the bill), *quoted in California Med. Ass'n v. FEC*, 641 F.2d 619, 637 n.5 (9th Cir. 1980) (Choy, J., concurring and dissenting). In passing the Campaign Act, Congress intended to entrust administration of the Act "to a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience." *See* H.R. Rep. No. 917, 94th Cong., 2d Sess. 4 (1976), *reprinted in* FEC, LEGISLATIVE HISTORY OF FEDERAL ELECTION CAMPAIGN ACT AMENDMENTS OF 1976, at 804 (GPO 1977) [hereinafter, "1976 LEGIS. HISTORY"]. By giving the FEC "exclusive primary jurisdiction,"[17] Congress explained that its

---

[17] Congress amended the Campaign Act in 1980 to drop the word "primary" without expressing any legislative intent for doing so. The D.C. Circuit has noted, and the FEC argues, that this deletion was a technical modification that did not change the meaning of the provision. *See Carter-Mondale Reelection Comm., Inc. v. FEC*, 642 F.2d 538, 545 n.9 (D.C. Cir. 1980) ("It would seem that 'exclusive jurisdiction' would encompass both judicial doctrines of (1) exhaustion of administrative remedies and (2) primary jurisdiction."). Stockman does not challenge this

-20-

intent was to make the jurisdiction of the FEC substantially similar to that of the National Labor Relations Board, as expressed by the Supreme Court in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S. Ct. 773, 3 L.Ed.2d 775 (1959). *See* H.R. Rep. No. 917, 94th Cong., 2d Sess. 4 (1976), *reprinted in* 1976 LEGIS. HISTORY, at 804.

In *Garmon*, the Supreme Court stated that the National Labor Relations Act ("NLRA") confided

> primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearings and decision, including judicial relief pending a final administrative order.

*See Garmon*, 359 U.S. at 242, 79 S. Ct. at 778. Congress indicated that the administrative structure set out in the NLRA and *Garmon* "captures the essence" of the Campaign Act's enforcement procedures. Thus, Congress stated that the structure would be analogous to the NLRA, where "all complaints bottomed on an alleged violation of the NLRA are within that Agency's 'exclusive competence' and that all other tribunals must therefore 'yield to the primary jurisdiction'" of the agency. *See* H.R. Rep. No. 917, 94th Cong., 2d Sess. 4 (1976), *reprinted in* 1976 LEGIS. HISTORY, at 804 (quoting *Garmon*, 242, 79 S. Ct. at 778).

Prudential considerations and the nature of FEC investigations also support our holding that the district court lacked jurisdiction to hear Stockman's claim. First, allowing the person

conclusion.

under investigation to bring suit in district court any time he felt aggrieved by the investigation could compromise the ability of the agency to investigate and enforce the Act. *Cf. FTC v. Standard Oil Co.*, 449 U.S. 232, 242-43, 101 S. Ct. 448, 494, 66 L.Ed.2d 416 (1980) ("[E]very respondent to a Commission complaint could make the claim that [plaintiff] made. Judicial review of the averments in the Commission's complaints should not be a means of turning prosecutor into defendant before adjudication concludes."); *see also Veldhoen v. United States Coast Guard*, 35 F.3d 222, 226 (5th Cir. 1994) (dismissing an APA claim brought by the subject of a fact-finding Coast Guard investigation because his claim was "an attempt to shortcut the proceedings at the start of the Marine Board inquiry.").

Second, the FEC's investigation does not determine any rights of the person under review and merely leads to a possible FEC decision to seek *de novo* judicial review to enforce the provisions of the Act. *See* 2 U.S.C. § 437g(a)(4); *see also FEC v. Furgatch*, 869 F.2d 1256, 1258 (D.C. Cir. 1989) ("[I]n determining the amount of the penalty [under the Campaign Act], a district court should consider (1) the good or bad faith of the defendants; (2) the injury to the public; (3) the defendant's ability to pay; and (4) the necessity of vindicating the authority of the responsible federal agency."). In *Veldhoen*, although we based our decision on lack of finality, we explained that "the statutory scheme at issue here is merely investigatory and only empowers the Secretary to recommend further civil or criminal action. The Board's

-22-

conclusions))which notably have not been made yet))will not fix legal rights or impose obligations, even if further proceedings prompted by the Board's decision may." *Veldhoen*, 35 F.3d at 226; *see also SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742, 104 S. Ct. 2720, 2725, 81 L.Ed.2d 615 (1984) (holding that SEC administrative investigation into possible violation of federal securities laws "adjudicates no legal rights"); *Laird v. Tatum*, 408 U.S. 1, 92 S. Ct. 2318, 33 L.Ed.2d 154 (1972) (finding that plaintiff could not challenge Army's intelligence-gathering investigation because it did not threaten cognizable interest of the plaintiffs).

Finally, even if the FEC ultimately concludes after its investigation that there is "probable cause" that Stockman violated the Campaign Act, the FEC must try to correct the violation by conference or conciliation before bringing a *de novo* civil action. *Cf. Standard Oil Co.*, 449 U.S. at 240-41, 101 S. Ct. at 493 ("By its terms, the Commission's averment of 'reason to believe' that [the respondent] was violating the Act is not a definitive statement of position. It represents a threshold determination that further inquiry is warranted . . . ."); *Abbs*, 963 F.2d at 927 ("A challenge to administrative action . . . falls outside the grant of jurisdiction [in the APA] when the only harm the challenger seeks to avert is the inconvenience of having to go through the administrative process before obtaining a definitive declaration of his legal rights.").

Stockman ignores both the plain language of the statute

-23-

(creating only two exceptions to the exclusive jurisdiction of the FEC) and the detailed administrative scheme for enforcing the Act, and relies instead on the general "presumption of review" under the APA. Stockman argues that the two provisions providing for judicial review in the Campaign Act are not exclusive, but simply additional to those provided by the APA. Stockman fails to elucidate a single case in support of his claim. Moreover, Stockman's argument would render the Campaign Act's expression of exclusive jurisdiction a dead letter. The Campaign Act's creation of a private cause of action in the District of Columbia does not indicate that Congress was trying to limit otherwise available judicial review;[18] quite the contrary, in light of the numerous expressions supporting exclusive jurisdiction for the FEC, section 437g(a)(8) demonstrates that Congress was expanding judicial review in this specific situation alone.

Had Stockman truly wanted to prod the FEC into completing its investigation more expeditiously, he could have filed a complaint

---

[18]      In light of the plain language of section 437g(a)(8), it is not possible that this section restricts *otherwise available* judicial review as Stockman claims. *See* 2 U.S.C. § 437g(a)(8); *see also Walther v. Baucus*, 467 F. Supp. 93, 94 (D. Mont. 1979). If judicial review were *otherwise available* under the APA, section 437g(a)(8) would not be a restriction and would, instead, be utterly superfluous, because it states only that a party "*may* file a petition" in the District of Columbia. While a claim under section 437g(a)(8) *is* restricted to the District of Columbia, it is because section 437g(a)(8) is the only provision creating a cause of action for private parties. *See Walther*, 467 F. Supp. at 94 (holding that section 437g(a)(8) is not permissive and requires claim to be brought in the District of Columbia because Campaign Act sets forth the exclusive remedy under the Act). Stockman's claim that 437g(a)(8) is not a "grant" of judicial review flies in the face of its plain language. *See* 2 U.S.C. § 437g(a)(8).

with the FEC.  *See* 2 U.S.C. § 437g(a)(1).  Consistent with the structure and intent of the FEC's "exclusive jurisdiction," this would have given the FEC the first opportunity to resolve Stockman's claims before he sought judicial interference.  *See* 2 U.S.C. § 437g.  Instead, Stockman repeatedly asked the FEC to dismiss the complaint, sought numerous extensions of time, refused to fully answer the interrogatories requested by the FEC, sought to have the district court quash FEC subpoenas, and sought to have the district court dismiss the administrative complaint and enjoin the investigation.  These are certainly not the actions of someone seeking an expedited investigation and indicate that this entire litigation could have been avoided had Stockman simply filed an administrative complaint with the FEC.[19]  Then, if the FEC dismissed the administrative complaint *or failed to act upon it*, and Stockman was "aggrieved" by the FEC's failure to act, he could file a petition in the federal court for the District of Columbia.[20]  *See*

---

[19]    It was not until Stockman appeared before this Court that he sought an order requesting an expedited investigation.  Indeed, Stockman's complaint in district court (and the motions to dismiss he filed with the FEC) indicate that he wanted only to have the investigation dismissed and the FEC enjoined from further investigation of his campaign.

[20]    We, of course, express no opinion on whether the District Court for the District of Columbia would exercise jurisdiction to entertain such a suit or what remedy would be available.  *See* 2 U.S.C. § 437g(a)(8)(C) ("[T]he court may declare that the dismissal of the complaint or the failure to act is contrary to law, and may direct the Commission to conform with such declaration within 30 days . . . ."); *see also Perot*, 97 F.3d at 559 ("When the FEC's failure to act is contrary to law, we have interpreted § 437g(a)(8)(C) to allow nothing more than an order requiring FEC action.").  The question of whether the person under FEC investigation could demonstrate an injury in fact traceable to the FEC's alleged delay would be squarely presented in such a case.

2 U.S.C. § 437g(a)(8); *see also Perot*, 97 F.3d at 558-59 (explaining that "if 'Congress specifically mandates, exhaustion is required'") (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S. Ct. 1081, 1086, 117 L.Ed.2d 291 (1992)).

## IV

Stockman fails to confront the substantial evidence that Congress set forth the exclusive means for judicial review under the Campaign Act and that his claim does not fall among them. The plain language of the statute coupled with the detailed administrative process for investigating complaints indicate clear and convincing evidence that Congress intended to preclude judicial review of Stockman's claim under the circumstances presented in this case. "We assume that in formulating those procedures Congress, whose members are elected every two or six years, knew full well that complaints filed shortly before elections, or debates, might not be investigated and prosecuted until after the event. Congress could have chosen to allow judicial intervention in the face of such exigencies, but it did not do so." *Perot*, 97 F.3d at 559. If Stockman wishes us to entertain a cause of action for people under FEC investigation, he must take his argument to his former brethren in Congress, not this Court. As we have said, we are not free to disregard congressional judgment.

---

*See Common Cause v. FEC*, 108 F.3d 413, 418-19 (D.C. Cir. 1997) (holding that an administrative complainant bringing suit under section 437g(a)(8) "cannot establish standing merely by asserting that the FEC failed to process its complaint in accordance with law."). "Section 437g(a)(8) does not confer standing; it confers a right to sue upon parties who otherwise already have standing." *Id.* at 419.

Because the Campaign Act precludes judicial review of Stockman's claim, the district court lacked subject matter jurisdiction. The district court granted summary judgment for the FEC on the merits of Stockman' claim; the court should have dismissed for want of jurisdiction, and we therefore modify the judgment accordingly.[21] *See Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997) (holding that where district court lacked subject matter jurisdiction, "the district court's judgment must be modified to make it a dismissal for want of subject matter jurisdiction"); *see also Veldhoen*, 35 F.3d at 226. Thus, the judgment is AFFIRMED as modified.

<span style="color:red">ENDRECORD</span>

---

[21]    The FEC's motion to strike Stockman's reply brief and its motion to file a surreply are denied as moot.

DENNIS, Circuit Judge, specially concurring:

I concur fully in the holding and in the essential reasons of the excellent majority opinion. I respectfully do not join, however, in the majority's discussions and conclusions with respect to two issues: (1) Whether a person under FEC investigation may file a complaint with the FEC protesting the FEC's violation of the FECA under 2 U.S.C. § 437g(a)(1); and (2) Whether "[a]ny party aggrieved . . . by a failure of the Commission to act" on a complaint, who "may file a petition with the United States District Court for the District of Columbia" under § 437g(8)(A), can include anyone other than an administrative complainant. It is not necessary for this court to reach these issues in deciding that we and the district court lack subject matter jurisdiction to resolve unreasonable delay claims under the FECA. Consequently, the interpretation of the FECA with respect to those issues is better left to courts having jurisdiction to resolve such claims.

H:\SHARED\OPCLERK\WEST\96-40994.CV0