In re DINASTIA, L.P. and Official Committee of Unsecured Creditors, Debtor.

Enterasys Networks, Inc., Plaintiff,

v.

Mexmal Mayorista, S.A. de C.V., International Bancshares Corporation d/b/a IBC, Patrick Wong, Alfredo Flores, Gulfstar Group G.P., L.L.C., International Finance Corporation d/b/a IFC, Mexmal Group, Ltd. d/b/a Grupo Mexmal, and Mexmal Group Management, L.L.C., Defendants.

Adversary No. 05–3517.
Civil Action No. 04:07–cv–02501.

United States District Court,
S.D. Texas,
Houston Division.

Nov. 8, 2007.

**514**

Alex Darcy, Askounis & Borst PC, Chicago, IL, Sigifredo Perez, III, Kazen, Meurer and Perez, LLP, Laredo, TX, for Plaintiff.

Alejandro E. Villarreal, III, Baldemar Garcia, Jr., Person Whitworth et al., Carlos David Castillon, Freeman & Castillon, Laredo, TX, Kyung S. Lee, Diamond McCarthy et al., Robert Andrew Black, Zack A. Clement, Fulbright Jaworski LLP, Douglas H. Edwards, Haynes & Boone LLP, Steven Douglas Shurn, Hughes Watters and Askanase, Houston, TX, Diann M. Bartek, Cox Smith Matthews Inc., San Antonio, TX, Stephen W. Lemmon, Susana Carbajal, Brown McCarroll LLP, Austin, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

KENNETH M. HOYT, District Judge.

### I. INTRODUCTION

Pending before the Court is the defendant, International Finance Corporation's ("IFC"), motion to dismiss the plaintiff's, Enterasys Networks, Inc. ("Enterasys"), Amended Complaint for lack of subject matter jurisdiction based on immunity pursuant to FED.R.CIV.P. 12(b)(1) and for failure to state a claim pursuant to FED. R.CIV.P. 12(b)(6) (Docket No. 11).[1] Enter-

---

1. Prior to this Court's referral of this case, motions to dismiss were filed by the defendants, Patrick Wong and Alfredo Flores; GulfStar Group G.P. and International Banc- shares Corporation; and Mexmal Group, Ltd. and Mexmal Group Management, LLC. By way of their motions, the defendants generally moved to dismiss Enterasys' Amended Com-

asys has filed a response to the motion (Docket No. 12) and IFC has filed a reply (Docket No. 13). Having carefully considered the parties' submissions, the record and applicable authorities, the Court determines that IFC's motion to dismiss for lack of subject matter jurisdiction, pursuant to FED.R.CIV.P. 12(b)(1), should be GRANTED.

## II. PROCEDURAL BACKGROUND

On March 10, 2005, Dinastia L.P. ("Dinastia"), Dinastia International Corp., Dinamex, Inc. ("Dinamex"), and Patal Investments, L.P. (Dinastia and Dinamex collectively referred to as the "Dinastia Debtors"), filed voluntary petitions for relief under Title 11, Chapter 11, of the U.S.Code in the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division. The cases were ordered jointly administered under Case No. 05–33650–H5–11.

On May 13, 2005, Enterasys filed a lawsuit against Dinastia, Dinamex, Mexmal Mayorista, S.A. de C.V. ("Mexmal Mayorista"), International Bancshares Corporation d/b/a IBC ("IBC"), Patrick Wong ("Wong"), Alfredo Flores ("Flores"),

GulfStar Group G.P., L.L.C. ("GulfStar"), IFC, Mexmal Group, Ltd. d/b/a Grupo Mexmal ("Mexmal Group") and Mexmal Group Management, L.L.C. ("Mexmal Management"), in the 341st Judicial District Court, Webb County, Texas, identified as Cause No. 2005–CVF–0655D3 (the "state court action").

On July 6, 2005, the defendants, IFC, IBC and GulfStar, filed a Joint Notice of Removal, removing the state court action to the U.S. Bankruptcy Court for the Southern District of Texas, Houston Division. As their basis for removal, the defendants alleged that jurisdiction of the state court action was proper in the bankruptcy court pursuant to 28 U.S.C. §§ 1452(a) and 1334(b) as a core matter under 28 U.S.C. §§ 157(b)(2)(A)-(C), 157(b)(2)(F) and 157(b)(2)(O) and in connection with the bankruptcy cases being administered under Case No. 05–33650–H5–11. They further alleged that removal was appropriate under 22 U.S.C. § 282f, which provides that the U.S. district courts shall have original jurisdiction of any action to which IFC is a party and further authorizes IFC to remove any action in which it is a defendant from a state court to a federal court. The defendants, Wong,

plaint pursuant to FED.R.CIV.P. 12(b)(1) for lack of subject matter jurisdiction due to Enterasys' alleged lack of standing and pursuant to FED.R.CIV.P. 12(b)(6) for failure to state a claim. During this time, the defendant, Mexmal Mayorista, S.A. de C.V., also moved to dismiss Enterasys' Amended Complaint for lack of subject matter jurisdiction on the basis of lack of standing, lack of personal jurisdiction and pursuant to the doctrine of forum non conveniens. In an Order dated June 15, 2006, the bankruptcy court denied the aforementioned defendants' motions to dismiss pursuant to 12(b)(1) for lack of standing and further ordered the parties to submit supplemental briefs citing to legal authority construing whether the claims asserted by Enterasys constitute claims against property of the debtors under 11 U.S.C. § 102 or otherwise constitute a dispute over which the bankruptcy

court has core jurisdiction under 28 U.S.C. § 157. On February 26, 2007, after its receipt and review of the parties' supplemental briefs, the bankruptcy court entered an Order recommending withdrawal of the reference of this case in light of the district court's original jurisdiction over cases involving IFC and the limited referral of cases to the bankruptcy court. Subsequent to the bankruptcy court's entry of the Order recommending withdrawal of the reference, but prior to this Court's receipt of this case, the defendant, Mexmal Mayorista, S.A. de C.V., instituted bankruptcy proceedings in Mexico. Because the record reflects that the Bankruptcy Court has adjudicated all issues with regard to the aforementioned motions, this Court need not reconsider them nor address any ancillary matters relating to them.

Flores, Mexmal Management, Mexmal Group and Mexmal Mayorista, consented to the removal. Consequently, the state court action was referred to the bankruptcy court and administered as an adversary proceeding in connection with bankruptcy Case No. 05–33650–H5–11. On November 23, 2005, pursuant to Court Order, Enterasys filed its Amended Complaint dismissing the Dinastia Debtors as defendants.

On February 26, 2007, the bankruptcy court entered an Order recommending that the reference of the case be withdrawn. On August 22, 2007, this Court entered an Order granting the bankruptcy court's recommendation. The action is currently pending before this Court as Civil Action No. 04:07–cv–02501.

## III. FACTUAL BACKGROUND

During the period between May 23, 2002 and May 2003, Enterasys Networks Mexico S.A. de C.V. ("Enterasys Mexico") and Mexmal Mayorista, a Mexican company engaged in the business of buying, selling and distributing information technology products in Mexico and the United States, entered into numerous agreements, reflected by a series of invoices, whereby Mexmal Mayorista agreed to purchase certain telecommunications equipment manufactured and/or supplied by Enterasys Mexico. Mexmal Mayorista made only partial payment to Enterasys Mexico for the goods sold and an outstanding debt in the amount of $684,349 remains due to Enterasys Mexico.

From some time in October 2002 until around March 2005, Dinastia, Mexmal Mayorista's primary vendor, would purchase goods from U.S.-based vendors and resell them to Mexmal Mayorista. Mexmal Mayorista would render payment for such goods to Dinastia once the goods were resold. Dinastia financed the purchases with a $3,000,000 line of credit from

IBC, secured by a lien on all of its assets. Sometime in 2002, Mexmal Mayorista began experiencing financial difficulty, thereby causing it to fall behind on repaying Dinastia for its goods. Dinastia, in turn, began to fall short on its debt obligations to IBC and by late 2002, Dinastia had fully drawn its line of credit with IBC. Consequently, IBC demanded that Dinastia "turn" or pay down the line of credit, but because Wong and Flores did not have the funds on hand to pay down the line, they sought financing with the assistance of GulfStar, an investment bank majority-owned by IBC.

GulfStar eventually arranged for IFC, an international development bank and subsidiary of the World Bank, to loan funds to Mexmal Mayorista in an amount sufficient to pay-off Dinastia's line of credit with IBC and to pay Dinastia's general creditors. Specifically, on June 27, 2003, Mexmal Mayorista entered into a loan agreement with IFC under the terms of which IFC agreed to lend Mexmal Mayorista ten million dollars (U.S. $10,000,000). According to IFC, it fully funded the loan by delivering the loan proceeds to Mexmal Mayorista in Mexico.

Additionally, in connection with the loan, Mexmal Group, a Texas limited partnership, and Mexmal Management, a Texas limited liability company, were formed. Wong, president, CEO and 51% shareholder of Mexmal Mayorista and Flores, vice-president and 49% shareholder of Mexmal Mayorista, agreed to transfer their shares in Mexmal Mayorista as well as their shares in Dinastia and Dinamex to Mexmal Group. Thereafter, Wong, Flores and Mexmal Management pledged their interests in Mexmal Group to IFC as additional security for the loan.

Of the funds borrowed from IFC, Mexmal Mayorista paid $8,000,000 to Dinastia on account of its outstanding debt owed.

Dinastia, in turn, paid approximately $2,900,000 to IBC as repayment on its line of credit. It also paid $5,000,000 to its other creditors. Enterasys Mexico, however, did not receive any payment from the loan proceeds. Enterasys argues that all of this activity was done with IFC's knowledge and consent.

On or about September 7, 2003, Enterasys Mexico assigned all of its rights to payment owed under the invoices to the plaintiff, Enterasys, its U.S. affiliate.[2] On September 17, 2003, Enterasys filed a lawsuit against Mexmal Mayorista in the U.S. District Court for the Southern District of Texas, Laredo Division, styled *Enterasys Networks, Inc. v. Mexmal Mayorista S.A. de C.V. d/b/a Dinastia International and d/b/a the Mexmal Group,* and identified as Civil Action No. L–03–cv–139. Pursuant to an Order dated November 2, 2004, Judge Ellison dismissed the lawsuit for lack of subject matter jurisdiction holding that the assignment from Enterasys Mexico to Enterasys was a collusive assignment "concocted in order to create jurisdiction in a U.S. court."

On May 13, 2005, Enterasys commenced the instant action against Mexmal Mayorista, Dinastia, Dinamex, GulfStar, IFC, IBC, Wong, Flores, Mexmal Management and Mexmal Group. With respect to IFC, Enterasys alleges that it is liable for fraudulent conveyance under the Texas Uniform Fraudulent Transfer Act ("TUFTA"),[3] civil conspiracy to violate TUFTA and for inducing Wong and Flores, as officers of Mexmal, to breach their fiduciary duties to their creditors. IFC now moves to dismiss Enterasys' claims against it.

## IV. CONTENTIONS OF THE PARTIES

### A. IFC's Contentions

IFC moves to dismiss Enterasys' claims against it pursuant to Rule 12(b)(1) for the lack of subject matter jurisdiction and pursuant to Rule 12(b)(6) for Enterasys' failure to state claims upon which relief may be granted. IFC's primary contention is that it has immunity from Enterasys' claims under the International Organizations Immunities Act ("IOIA"), 22 U.S.C. § 288a(b). IFC contends that its right to immunity under the IOIA is absolute unless expressly waived. IFC argues that the mere inclusion of a service clause in its Articles of Agreement is not sufficient to constitute a waiver of its right to immunity under the IOIA. IFC also asserts that it did not waive its right to immunity by joining in the Joint Notice of Removal previously filed in this case. Moreover, IFC contends that TUFTA does not apply to the transfers made both to and by Mexmal in this case and further alleges that Mexican law should be applied. In the alternative, IFC urges the Court to dismiss Enterasys' Amended Complaint for failure to state a claim. IFC avers that the facts and allegations raised by Enterasys do not support a claim for fraudulent conveyance under TUFTA, civil conspiracy to violate TUFTA or inducement of breach of fiduciary duty and should be dismissed.

### B. Enterasys' Contentions

In opposition to IFC's motion to dismiss, Enterasys sets forth essentially four arguments. First, Enterasys argues that IFC's Articles of Agreement serve to

---

**2.** Enterasys is a Delaware corporation licensed to do business in Texas. Enterasys Mexico is not licensed to do business in Texas.

**3.** In its Response to IFC's Motion to Dismiss, Enterasys concedes that its claim against IFC for violations of TUFTA under § 24.006 of the TEX BUS. & COMM.CODE should be dismissed. (Pl.'s Resp. to Mot. to Dismiss at 15.)

waive its right to immunity under the IOIA. In support of this contention, Enterasys asserts that by applying the "corresponding benefit" test promulgated by the court in *Mendaro v. World Bank*, IFC should be deemed to have waived its immunity. Second, Enterasys asserts that Texas law applies to IFC's fraudulent conduct because the tortious activity occurred in Texas, the transferred funds are located in Texas and all the defendants, except for IFC, are situated in Texas. Third, Enterasys argues that its claim for civil conspiracy against IFC is not barred because it is not required to prove that IFC itself violated § 24.006 of the TEX. BUS. & COMM. CODE in order to establish liability for civil conspiracy, but rather that one of the defendants violated TUFTA and that IFC participated in the violation. Fourth, Enterasys alleges that it has stated a viable claim for inducement of breach of fiduciary duty. Enterasys argues that to establish otherwise, IFC is required to demonstrate that: (1) Mexican law applies; and (2) such a duty is non-existent under Mexican law. In this regard, Enterasys argues that IFC has failed to meet its burden.

## V. STANDARD OF REVIEW

### A. Legal Standard for Rule 12(b)(1)

▪ A motion to dismiss filed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction must be considered by the court "before any other challenge because the court must find jurisdiction before determining the validity of a claim." *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir.1994) (internal citation omitted). Since federal courts are considered courts of limited jurisdiction, absent jurisdiction conferred by statute, federal courts lack the power to adjudicate claims. *See, e.g., Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir.1998)(citing *Veldhoen v. United States*

*Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). Therefore, the party seeking to invoke the jurisdiction of a federal court carries the burden of proving its existence. *Stockman*, 138 F.3d at 151; *Cross Timbers Concerned Citizens v. Saginaw*, 991 F.Supp. 563, 566 (N.D.Tex.1997).

▪ In ruling on a motion to dismiss for lack of subject matter jurisdiction, "a district court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir.1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). In making its ruling, the district court may rely on any of the following: "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *MDPhysicians*, 957 F.2d at 181 n. 2 (citing *Williamson*, 645 F.2d at 413).

▪ The standard of reviewing a motion to dismiss pursuant to 12(b)(1), however, turns on whether the defendant has made a "facial" or "factual" jurisdictional attack on the plaintiffs complaint. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir.1981). A defendant makes a "facial" jurisdictional attack on a plaintiff's complaint by merely filing a motion under Rule 12(b)(1). *Id.* In this instance, the court is merely required to assess the sufficiency of the allegations contained in the plaintiff's complaint, which are presumed to be true. *Id.* A "factual" attack, however, is made by providing affidavits, testimony and other evidentiary materials challenging the court's jurisdiction. *Id.* When a "factual" jurisdictional attack has been made by a defendant, the plaintiff is required to submit facts in support of the court's jurisdiction and bears the burden of proving by a preponderance of the evi-

dence that the court, in fact, has subject matter jurisdiction. *Id.*

### B. Legal Standard for Rule 12(b)(6)

 Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief may be granted." FED.R.CIV.P. 12(b)(6). Under the demanding strictures of a Rule 12(b)(6) motion, "the plaintiffs complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 194 (5th Cir.1996). In essence, "the district court must examine the complaint to determine whether the allegations provide relief on any possible theory." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001.) Under Rule 12(b)(6), a court will dismiss a complaint only if the "[f]actual allegations [are] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, —— U.S. ——, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1965.

### VI. DISCUSSION AND ANALYSIS

As previously discussed, IFC lodges essentially two arguments in support of its motion to dismiss. The first of these is that it possesses the equivalent of sovereign immunity from Enterasys' claims because it is a public international organization entitled to protection under the IOIA. Since this argument challenges this Court's ability to address the merits of Enterasys' claims in this case, the Court must deal with this challenge as a threshold matter.

 Here, it is undisputed that IFC is a public international organization governed by the IOIA. Pursuant to the IOIA of 1945, President Dwight D. Eisenhower, by Executive Order, "designate[d] [IFC] as a public international organization entitled to enjoy the privileges, exemptions, and immunities conferred by the said International Organizations Immunities Act." Exec. Order 10680, 21 Fed.Reg. 7647 (Oct. 2, 1956); 22 U.S.C. § 282 (Acceptance of membership by United States in International Finance Corporation). Specifically, the IOIA defines the privileges accorded to international organizations such as IFC as follows:

> International organizations, their property and their assets, wherever located, and by whomsoever held, shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments, except to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract.

22 U.S.C. § 288a(b). Further, the IOIA's literal language and statutory framework provide a comprehensive scheme governing jurisdiction, attachment, venue and removal in lawsuits in which IFC has been named a party. *See, e.g.*, 22 U.S.C. § 288a(b) (noting that international organizations as well as their property and assets enjoy the same immunity from suit and every form of judicial process as that enjoyed by foreign governments); 22 U.S.C. § 288a(c) (denoting that the property and assets of international organizations are immune from search and confiscation and their archives are inviolable); 22 U.S.C. § 282f (conferring original jurisdiction over any action in which IFC is a party to the U.S. District Court in which its principal office in the United States is located, providing venue for such actions in that

district and authorizing removal of any such action from state to federal court). Congress, through its enactment of the IOIA and its incorporation of IFC's Articles of Agreement into the U.S.Code, has conferred a grant of immunity on IFC which eliminates this Court's authority to hear Enterasys's claims, absent some express provision providing otherwise. *See, e.g.,* 22 U.S.C. § 282g (providing that the provisions of Article VI, Sections 2 through 9 "shall have full force and effect in the United States and its Territories and possessions upon acceptance of membership by the United States in, and the establishment of, the Corporation.")

This grant of immunity, however, is not without limitation. As an international organization, the immunity granted to IFC is subject to the following limitations: (1) the international organization itself can expressly waive its immunity for the purpose of a proceeding or pursuant to the terms of a contract; (2) "the President may specifically limit the organization's immunities when he selects the organization as one entitled to enjoy the Act's privileges and immunities"; and (3) in cases of abuse, the President may subsequently modify, condition or revoke an international organization's immunity by executive order. *Mendaro v. World Bank,* 717 F.2d 610, 613–14 (D.C.Cir.1983); *see also* 22 U.S.C. § 288.

In this case, it is undisputed that there has been no modification or revocation of President Eisenhower's Executive Order with respect to the privileges and immunities maintained by IFC. Thus, this Court's ability to accept jurisdiction over Enterasys' claims hinges on whether IFC has expressly waived its right to immunity in this case. *Id.* at 614; *see also Osseiran v. Int'l Fin. Corp.,* 498 F.Supp.2d 139, 143 (D.D.C.2007) (citing *Weinstock v. Asian Dev. Bank,* No. 105 Civil Action No. 05–

174(RMC), 2005 WL 1902858, at *2 (D.D.C.2005)) (reasoning that a court must dismiss a claim if it does not possess subject matter jurisdiction to hear the dispute as a result of a defendant's grant of immunity).

Although Enterasys concedes that IFC enjoys immunity under the IOIA, it, nevertheless, argues that IFC has waived its right to immunity under the IOIA for purposes of this lawsuit by way of its inclusion of the provision contained at Article VI, Section 3 of its Articles of Agreement. Specifically, Article VI, Section 3 of IFC's Articles of Agreement provides:

SECTION 3. Position of the Corporation with Regard to Judicial Process

Actions may be brought against the Corporation only in a court of competent jurisdiction in the territories of a member in which the Corporation has an office, has appointed an agent for the purpose of accepting service or notice of process, or has issued or guaranteed securities. No actions shall, however, be brought by members or persons acting for or deriving claims from members. The property and assets of the Corporation shall, wheresoever located and by whomsoever held, be immune from all forms of seizure, attachment or execution before the delivery of final judgment against the Corporation.

(Articles of Agreement of the International Finance Corporation, art. VI, § 3, Dec. 5, 1955, 7 U.S.T. 2197.) This Court is unpersuaded by Enterasys' argument that the aforementioned provision should be read so broadly as to establish a blanket waiver of IFC's immunity for the claims alleged in this case.

While the Fifth Circuit has not yet specifically dealt with this issue, courts that have examined this issue have generally employed a narrow reading of provisions similar to those represented in Arti-

cle VI, Section 3 of IFC's Articles of Agreement. Although some older decisions may have employed a much broader construction to language similar to that represented in Article VI, Section 3, the D.C. Circuit has most recently adopted an interpretation which effectively narrows the breadth of this provision. *See Mendaro*, 717 F.2d at 615; *see also Atkinson v. Inter–American Dev. Bank*, 156 F.3d 1335, 1338 (D.C.Cir.1998). Some forty years ago, in *Lutcher S.A. Celulose e Papel v. Inter–American Dev. Bank*, the D.C. Circuit Court interpreted language similar to that contained in Article VI, Section 3 of IFC's Articles of Agreement as not representing "a venue provision for actions resulting from individual waivers," but rather as "a provision waiving immunity and laying venue for the suits permitted."[4] 382 F.2d 454, 457 (D.C.Cir.1967). Since *Lutcher*, however, the D.C. Circuit has employed a much narrower reading of the scope of provisions such as the one contained in Article VI, Section 3 of IFC's Articles of Agreement.

In *Mendaro v. World Bank*, for instance, an employee claimant sued the World Bank under Title VII for employment discrimination and retaliation, arguing that the World Bank's Articles of Agreement effectively waived its immunity from suit. *Mendaro*, 717 F.2d at 612–13. The World Bank moved to dismiss the lawsuit on the basis of immunity. *Id.* The district court dismissed the lawsuit and the D.C. Circuit affirmed the district court's dismissal of the suit based on the World Bank's claim of immunity. *Id.* at 610. In affirming the district court's decision, the D.C. Circuit, while interpreting Articles of Agreement similar to those of IFC, rea-

soned that it was unable to construe "the somewhat clumsy and inartfully drafted language ... which the *Lutcher* court admitted was 'hardly a model of clarity'—as evincing an intent by the members of the Bank to establish a blanket waiver of immunity from every type of suit not expressly prohibited by reservations [contained within its Articles]." *Id.* at 614–15. The D.C. Circuit explained that the interpretation advocated by the plaintiff is "logical only if the waiver provisions are read in a vacuum, without reference to the interrelationship between the functions of the Bank and the underlying purposes of international immunities." *Id.* at 615. The D.C. Circuit further reasoned:

> When the language of [the venue/waiver provision] is approached from this viewpoint it is evident that the World Bank's members could only have intended to waive the Bank's immunity from suits by its debtors, creditors, bondholders, and those other potential plaintiffs to whom the Bank would have to subject itself to suit in order to achieve its chartered objectives.

*Id.*

Relying on its decision in *Mendaro*, the D.C. Circuit, subsequently in *Atkinson*, reasoned that the "formulation of the *Mendaro* test supports ... the default rule [that] the [international organization's] immunity should be construed as *not waived* unless the particular type of suit would *further* [its] objectives." *Atkinson*, 156 F.3d at 1338. (emphasis in original). This rationale is often referred to as the "corresponding benefits" test. *Id.* (citing *Mendaro*, 717 F.2d at 617).

---

4. The immunity of IFC and of the other World Bank entities is indistinguishable in that they all were granted immunity pursuant to similar executive orders. *See Lutcher*, 382 F.2d at 457–58; *see also* Exec. Order No. 11019, 27 Fed.Reg. 4145 (1962); Exec. Order No. 10680, 21 Fed.Reg. 7647 (Oct. 2, 1956); Exec. Order No. 9751, 11 Fed.Reg. 7713 (1946).

In this case, Enterasys contends that IFC's Articles of Agreement operate as a waiver of IOIA immunity by virtue of the venue/waiver provision contained in Article VI, Section 3 and pursuant to the precise language of President Eisenhower's Executive Order which stated, "[t]he designation of the International Finance Corporation made by this order is not intended to abridge in any respect ... immunities which such corporation may have acquired ...; nor shall such designation be construed to affect in any way the applicability of the provisions of section 3, Article VI, of the Articles of Agreement of the Corporation...." Exec. Order 10680, 21 Fed. Reg. 7647 (Oct. 2, 1956). In support of its broad waiver-based argument, Enterasys relies on the D.C. Circuit's decision in *Lutcher*. However, our examination of *Lutcher* in conjunction with the D.C. Circuit's decision in *Mendaro*, does not support the finding of a blanket waiver of immunity in this case as Enterasys insinuates.

In *Lutcher*, a plaintiff debtor of the defendant lending organization, the Inter-American Development Bank (the "Bank"), sued the Bank for breach of contract, alleging that the Bank violated certain provisions of its loan agreement with the debtor by making loans to the debtor's competitor. *Lutcher*, 382 F.2d at 456. Although the D.C. Circuit interpreted a waiver provision nearly identical to the Article VI, Section 3 venue/waiver provision contained in IFC's Articles of Agreement to be extensive enough to support the court's decision to exercise jurisdiction in spite of the Bank's claim of immunity under the IOIA, it is also clear that the court determined that the lawsuit arose out of the Bank's external commercial lending activities. *Mendaro*, 717 F.2d at 620. "Additionally, the court noted that a waiver of immunity to suits by the Bank's borrowers would directly aid the Bank in attracting respon-

sible borrowers." *Id.* (citing *Lutcher*, 382 F.2d at 459–60). Therefore, just as the court reasoned in *Mendaro*, even "*Lutcher* does not require us to interpret [the venue/waiver provision contained in Article VI, Section 3] in a manner that would expose [IFC] to potentially crippling litigation [while] not appreciably advance [its] ability to perform its functions." *Id.* at 620.

As further support for its position that IFC should be deemed to have waived its right to immunity by virtue of its inclusion of Article VI, Section 3, in its Articles of Agreement, Enterasys cites to the case of *Bro Tech Corp. v. European Bank for Reconstr. & Dev.*, No. 00–2160, 2000 WL 1751094 (E.D.Pa.2000). This Court, however, finds *Bro Tech Corp.* to be readily distinguishable from the instant case as well in that there is no evidence that IFC ever induced or even sought to induce Enterasys to invest in any joint venture or otherwise engage in any commercial transaction with Mexmal Mayorista. In fact, in this case there is no evidence that Enterasys and IFC ever conducted business with one another. In *Bro Tech Corp.*, the plaintiffs commenced an action against the European Bank for Reconstruction and Development (the "EBRD") alleging breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, tortious interference and conspiracy as a result of the EBRD inducing them to invest in a joint venture and its attempts to thwart their efforts to refinance certain loans emanating therefrom. *Bro Tech Corp.*, 2000 WL 1751094, *23. The EBRD moved to dismiss for lack of subject matter jurisdiction, in part, on the basis of immunity under the IOIA. *Id.* at *2. The district court, in construing Article 46 of the EBRD's Agreement Establishing the European Bank for Reconstruction and Development which contains language identi-

cal to that contained in IFC's Article VI, Section 3, concluded that the waiver provision was to be read narrowly and further applied the "corresponding benefits" test employed by the D.C. Circuit in *Atkinson* to the facts of the case. *Id.* at *4. After recognizing the EBRD's entitlement to absolute immunity under the IOIA, the district court determined that the EBRD had waived its immunity because it would receive a corresponding benefit which would further its objectives. *Id.* In so holding, the district court reasoned:

> If the EBRD could induce participation in any venture, and then act with impropriety towards the investors without any repercussions, then it is unlikely that any commercial establishment would wish to interact with them. Instead, it is clear that the EBRD must waive immunity to some extent for transactions such as the one sub judice.

*Id.*

In this case, unlike in *Bro Tech Corp.*, Enterasys is not the type of plaintiff "to whom [IFC] would have to subject itself to suit in order to achieve its chartered objectives" nor is it a debtor, creditor or bondholder of IFC. *Mendaro*, 717 F.2d at 615. As set forth in Article I of IFC's Articles of Agreement, IFC's chartered purpose is to "further economic development by encouraging the growth of productive private enterprise in member countries, particularly in the less developed areas, thus supplementing the activities of the International Bank for Reconstruction and Development." (Articles of Agreement of the International Finance Corporation, art. I, Dec. 5, 1955, 7 U.S.T. 2197.) In carrying out this purpose, IFC's objectives include: (i) assisting in financing the establishment of productive private enterprise; (ii) seeking to bring together investment opportunities; and (iii) seeking

to stimulate the flow of private capital. *Id.*

Here, in accordance with its stated purpose, IFC loaned money to Mexmal Mayorista, a Mexican company—not Enterasys—so that Mexmal could reduce payables, continue to operate and/or expand its operations of distributing information technology products. (*See* Bankr. Disclosure Statement at 21.) As such, by waiving its immunity in this case, IFC would receive no conceivable corresponding benefit in furtherance of its stated goals in that it has no direct relationship with Enterasys; it has no contracts or agreements with Enterasys; Enterasys is not a depositor or noteholder of a bank in which IFC holds a minority share or of any other financial institution in which IFC owns an interest; Enterasys owes no debts to IFC; IFC owes no debts to Enterasys; and IFC and Enterasys have never even engaged in a business transaction with one another.

The case of *Osseiran v. Int'l Fin. Corp.*, 498 F.Supp.2d 139, 145 (D.D.C.2007) cited by Enterasys, is similarly inapposite in that Enterasys, unlike the plaintiff in *Osseiran*, had no direct or indirect relationship with IFC; at no time engaged in communications or negotiations with IFC either before or during the course of its loan negotiations with Mexmal Mayorista; and Enterasys otherwise established no course of business dealings with IFC.

The district court for the District of Columbia specifically addressed the issue of whether an international organization will be deemed to have waived its right to immunity under the IOIA in suits brought by third parties where it has included a venue/waiver provision in its Articles of Agreement identical to the one contained in Article VI, Section 3 of IFC's Articles of Agreement in the case of *Atlantic Tele–Network Inc. v. Inter–American Dev.*

*Bank,* 251 F.Supp.2d 126, 128 (D.D.C. 2003). In that case, Atlantic Tele–Network, Inc. ("ATN") entered into a contract with the Guyanan government under which the government agreed to provide ATN with the exclusive right to build and service its domestic telecommunications system. *Id.* at 128. Subsequently, after constructing and operating the telecommunications system, ATN uncovered information that Guyana was about to receive a loan in the amount of approximately $18 million to $20 million from the Inter–American Development Bank ("IDB") to begin construction of a competing telecommunications system allegedly in violation of ATN's exclusive license. *Id.* As a result, ATN commenced an action against IDB, Guyana and two other IDB officials in charge of IDB's lending activities seeking to enjoin IDB from lending to Guyana. *Id.* IDB moved to dismiss ATN's lawsuit, in part, on the grounds of immunity under the IOIA. *Id.* at 131.

In opposition to IDB's motion, ATN argued that IDB waived its immunity due to the limited waiver of immunity contained in its Charter. *Id.* at 132. The district court held that IDB had not waived its immunity from suit by including the venue/waiver provision in its Articles of Agreement because allowing lawsuits by third-party entities such as ATN would not further IDB's objectives. *Id.* In so doing, the district court reasoned that "were this suit to be allowed, virtually any U.S. citizen with a commercial grievance against a debtor nation could challenge [a] loan to that nation without any corresponding benefit accruing thereby to the [international organization] whatsoever." *Id.* at 132.

Likewise, IFC has not waived its immunity from lawsuits such as the case at bar because permitting this lawsuit would not advance IFC's objectives. Further, none

of the cases interpreting the IOIA, have interpreted an international organization's waiver of immunity as extending to those so remotely related as Enterasys is to IFC in this case, especially given that Enterasys' status here is merely that of an assignee of a creditor of a borrower of IFC. Because the relationship between Enterasys and IFC is too tenuous and the claims alleged by Enterasys would not advance IFC's ability to perform its chartered objectives, this Court finds that IFC has not waived its immunity under the IOIA by virtue of its inclusion of the provision contained in Article VI, Section 3 of its Articles of Agreement.

## VII. CONCLUSION

Applying the aforementioned principles to IFC's Articles of Agreement, this Court finds no basis for implying that an express waiver of immunity was intended for the claims alleged by Enterasys against IFC in this case. Thus, the Court concludes that IFC's motion to dismiss Enterasys' Amended Complaint pursuant to FED. R.CIV.P. 12(b)(1) is hereby GRANTED. In the absence of a demonstrated basis for subject matter jurisdiction, this Court need not consider IFC's alternative challenges to Enterasys' claims and hereby denies any such remaining motions as moot.